In re Estate of Harry Edwards, Deceased.
Eleanor Edwards Westen, Appellant, v. Henry C. Warner, Executor, Appellee.

Gen. No. 9,727.

Heard in this court at the October term, 1941.     Opinion filed January 14, 1942.

PINES, STEIN & BEBER, of Chicago, and DIXON, DEVINE, BRACKEN & DIXON, of Dixon, for appellant; GEORGE S. PINES and HAROLD L. LIPTON, both of Chicago, and ROBERT L. BRACKEN, of Dixon, of counsel.

HENRY C. WARNER, *pro se*, and MOREY C. PIRES, of Dixon, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

The county court of Lee county, and the circuit court, on appeal, allowed appellee the sum of $12,000 for his services as executor of the last will of Harry Edwards, deceased. Appellant, the widow of the decedent, has appealed to this court from the order of the circuit court, on the ground that the amount allowed is excessive and exorbitant.

The decedent was for many years a judge of the Fifteenth Judicial Circuit, and for some years prior to his death, was a judge of the Appellate Court for the Fourth District. He died testate on October 27, 1939.

Appellee has been engaged in the general practice of law at Dixon in Lee county for more than 35 years. During that period he was closely affiliated with decedent and made all of his financial investments. The will, which named appellee as executor without bond, gave appellant one half of all the testator's property, and the residue to appellee in trust, for the benefit of the testator's brother and the brother's wife during their respective lives, and then to a nephew of the testator absolutely.

The gross value of the estate was at least $247,-552.89. There was approximately $155,000 in U. S. Treasury Bonds, Federal Farm Mortgage Corporation Bonds, and U. S. Savings Bonds. The remainder of the estate consisted principally of shares of preferred stock in the Dixon National Bank, real estate mortgages, notes, cash, two automobiles, and a house valued at $5,650.

Appellee testified he prepared the petition for probate of the will, procured waivers of notice from all the interested parties, examined the witnesses on the hearing, procured an order admitting the will to probate, took the oath, and at the suggestion of the court gave a bond of $25,000; that he gave the preliminary notice required by the U. S. Government, prepared an application for inheritance tax consents by this State, inventoried the contents of decedent's safety-deposit box, made copies for each of the interested parties, filed one copy with the inheritance tax department of this State, and rechecked the contents of the safety-deposit box; that he gave notice to creditors, obtained proof of publication and an order approving the notice, prepared and filed an inventory of the estate, and a request for the appointment of appraisers; that after sundry conferences with the parties, an award for the widow was fixed by agreement at $5,000, the household goods and one automobile; that thereupon he petitioned for a withdrawal of the warrant to appraisers

and obtained an order waiving the necessity of an appraisement or fixing an award; that to provide against any emergency, he rented another safety-deposit box in another bank, divided the securities, and made lists of the contents of each box for ready reference; that 29 claims were filed, checked, and lists prepared and submitted to the parties, and a stipulation was made allowing all of them except one, which after investigation, was also allowed; that in his opinion, only one asset of the estate, a $4,000 mortgage inherited by the decedent from his father on land in Iowa 440 miles from Dixon, could not be collected in full; that he made two trips to Iowa concerning its disposal, persuaded the owner of the land to make an application for a federal loan, and obtained the written agreements of the parties interested, but the landowner was unable to borrow enough to pay the mortgage in full; that there was a dispute as to whether another mortgagor had paid interest in advance, and after a conference with the parties, the principal of the mortgage was paid in full; that after defaults in interest on another mortgage and the mortgagor's failure to execute an extension agreement, foreclosure was filed and the mortgage was then paid in full; that interest on another mortgage in default at decedent's death was col-due for past years on account of insufficient returns review in connection with their claims that taxes were that he attended two or three hearings of the board of lected in full; that he prepared the local tax return for 1940 and secured the approval of appellant's attorneys; to the assessor; that he examined the schedules for previous years, presented the law to the board and successfully resisted the claim; that at the request of appellant's attorneys he prepared another copy of the inventory with notations in writing concerning each item, especially as to farm mortgages; that he prepared the State and Federal inheritance tax returns, had conferences with the inheritance tax attorneys and

other persons, all of which took considerable time; that he procured $800 for decedent's law books, for which he was first offered $400; that he prepared affidavits and secured duplicate certificates of title for the automobiles, the originals being lost; that he made a partial distribution which required petitions and orders for the different securities; that he obtained written consents from all the parties for the distribution, and prepared and took receipts as the securities were turned over; that he procured the State Treasurer's consent to a transfer of the bank stock, which was divided between the widow and the trustee; prepared income tax returns for 1939 and 1940, which were difficult because of no returns in previous years, and the fact that decedent's salary, formerly exempt, was taxable and had been increased in 1939; that he had two conferences in Chicago with appellant's attorneys at their request, at the first of which he was informed that if his fee exceeded $3,000 it would be contested.

Manifestly the detailed work in connection with the services above-mentioned took considerable time. Appellee testified he spent between 900 and 1,000 hours in services necessarily rendered the estate. None of his testimony is disputed. Four practicing attorneys of long experience testified the usual, reasonable and customary fee for the services rendered is $12,000 and two of them placed it at from $12,000 to $14,000 or $15,000. Two of them reside in Dixon. Two of them live at Sterling in the adjoining county of Whiteside and testified they are familiar with the usual, reasonable and customary fees in both counties. A trust officer from each of the following Chicago institutions: Harris Trust and Savings Bank, First National Bank of Chicago, Northern Trust Company and American National Bank and Trust Company, identified printed schedules of fees charged by those institutions for acting as administrator or executor. For estates of $100,000 to $250,000 the charges in the schedules are

from 2½ per cent to 3 per cent of the gross estate. None of them purports to be based upon the value of services actually rendered. Nobody testified the fees mentioned in the schedules would be the reasonable or the usual and customary fees for the services rendered in this case, or that $12,000 was unreasonable or was not the usual and customary charge. Section 336 of the Administration Act (Ill. Rev. Stat. 1941, ch. 3, par. 490 [Jones Ill. Stats. Ann. 110.587]) provides that an executor, or other legal representative named, shall be allowed reasonable compensation for his services. The proofs here more than meet the requirements of the statute, and there is no proof to the contrary. The schedules introduced in evidence by appellant, being based only on the value of the estate without regard to services rendered, would under the terms of the statute, be an improper basis for fixing compensation.

The reasonableness of the commission or fee to an executor depends upon the circumstances in each case. (*Martin v. Central Trust Co.*, 327 Ill. 622.) In that case, cited by appellant, an allowance of $1,100 as executor's fee, where the estate in Illinois was only $16,600 was reversed. The evidence showed the customary, usual and reasonable fee in estates less than $50,000 did not exceed 3 per cent. Obviously that holding is not applicable here.

The holding in the early case of *Willard v. Bassett,* 27 Ill. 37, that an administrator or executor could not take the office as a business or as a means of making money, but that it was to a certain extent associated with the idea of benevolence or philanthropy, is no longer applicable. In conformity with the customs and necessities of vastly increased business, trade and commerce, it is now recognized as a business, with statutory provisions authorizing banks and trust companies to engage therein, and a provision that anybody so acting shall be allowed reasonable compensation. So, too, the holding in *Colton v. Coffey,* 187 Ill. App. 558,

where an estate of $100,000 consisted principally of bonds on deposit in a bank, and the administrator had little to do, has no application here. The court in that case allowed him $1,500 where the attorney for the estate had done much of his work.

In *Elder v. Whittemore,* 51 Ill. App. 662, an administrator's commission in an estate of $300,000, consisting mostly of notes secured by mortgage and some municipal bonds, was allowed at 6 per cent, the maximum permitted by the statute. The court rejected the claim that the fee was unreasonable considering the size of the estate and that it was in such condition as to be settled with comparatively little difficulty or labor.

Appellee assumed personal responsibility for all the personal assets, their preservation, the collection of current accruals, and the efficient and proper administration and distribution of this large estate. Appellant's counsel in the argument say they doubt that more than a certain number of hours could have been spent in the respective activities mentioned, summarizing with an estimate of 208 total hours. The weakness of their assumption is demonstrated by their own estimates, which it is impracticable to detail here. Their claim that under *Litwin v. Litwin,* 375 Ill. 90, appellee is required to show the hours spent in each activity is without merit. That case involves the duty of a master in chancery to itemize his fees. No such duty is imposed upon an executor by the statute, and no case is cited where it has been required by the court. If appellant desired to question the testimony as to the time necessarily spent, she had the opportunity to do so on cross-examination or by other testimony. Not having done so, appellee's testimony stands uncontradicted, and its sufficiency was not questioned in either court below. It is now too late to do so.

The inventory alone covers 11 pages of the record. There were 128 separate bonds and 33 notes and mort-

gages of various maturities as to both principal and interest. Considering the large number of items, with the various maturities, it is apparent that much time was necessarily required in keeping track of the maturities, collecting and accounting. The preparation of the inheritance and income tax returns alone required both time and skill. The other activities mentioned likewise took considerable time. All of them required a high order of skill, under a personal responsibility for accuracy, efficient administration and fidelity. No criticism is found in the record of the manner in which the executor performed the duties imposed upon him. It is not claimed that appellee did not perform the services well and to the advantage of the estate; nor could there be. The evidence shows he carried out his duties diligently and efficiently. Appellee does not claim any of his services were rendered as an attorney, but the record shows the estate was saved the expense of an attorney fee. In our opinion, appellee did not exaggerate the time necessarily spent in the service he rendered the estate. He fixed no fee for his services, nor expressed any opinion as to their value, but detailed what he did. He was entrusted by the testator to execute the desires he expressed in his will. He did so in an acceptable manner. The testator knew from his experience that he would be compensated for so doing out of the assets of the estate he administered. Four disinterested competent lawyers and two courts have fixed the amount of his compensation at $12,000 for the services he rendered. All of the evidence is that this amount is reasonable compensation for those services. The order of the circuit court is therefore affirmed.

*Order affirmed.*