*In re* ESTATE OF FRANK KOTTRASCH, Deceased.—(ROBERT S. RAMSAY, Co-Ex'r of the Estate of Frank Kottrasch, Petitioner-Appellant, *v.* FIRST NATIONAL BANK OF LAKE FOREST, Respondent-Appellee.)

Second District   No. 76-568

Opinion filed August 22, 1978.

Terrence J. Brady, of Morrison & Nemanich, of Waukegan, for appellant.

Alfred W. Lewis, of Wasneski, Yastrow, Kuseski & Flanigan, of Waukegan, for appellee.

Mr. JUSTICE NASH delivered the opinion of the court:

Robert S. Ramsay, co-executor of the estate of Frank Kottrasch, deceased, appeals from an order of the trial court which fixed final executors' fees.

Frank Kottrasch died testate on December 6, 1974, leaving a gross estate of approximately $900,000. Pursuant to the provisions of his will, Ramsay and the First National Bank of Lake Forest (Bank), appellee herein, were appointed by the trial court as co-executors of the estate in January 1975. The bulk of the decedent's estate, except for his residence and personal effects, had been kept in a custodial account at the Bank and actively managed by it for a number of years prior to the time of his death. His will provided that his 82-year-old sister, Marie Kottrasch, was to receive a life interest in his estate with the remainder passing on to certain charities. In September 1975 an executors' final account, prepared by the Bank and the attorney for the executors, John B. Schmidt, was submitted to Ramsay for his approval. It provided for an attorney's fee of $40,000 for Schmidt and an executor's fee of $30,000 for the Bank, but made no provision for any executor's fee for Ramsay, whereupon he requested the trial court to fix an executors' fee and to direct that it be divided equally between the co-executors. In January 1976 Ramsay withdrew his earlier request and filed a petition objecting to the final account and to the executor's fee suggested for the Bank therein and also urged the Bank be held accountable for certain losses it allegedly caused the estate to suffer during administration. In July 1976 a hearing was held on this petition after which the trial court reduced the executor's fee of the

Bank to $20,000, apparently both because the amount of the suggested fee was not supported by the evidence and as a setoff for certain losses it found the Bank had caused the estate to suffer. The trial court also fixed an executor's fee of $3,000 to be paid Ramsay.

Ramsay appeals contending (1) that the $20,000 executor's fee awarded the Bank was not supported by the evidence and (2) that the trial court erred in failing to find the Bank liable for losses resulting for its imprudent sales of estate securities.

■■ ■ The Probate Act provides that an executor "shall be allowed reasonable compensation for his services * * *." (Ill. Rev. Stat. 1973, ch. 3, par. 336 (current version in Ill. Rev. Stat. 1977, ch. 110½, par. 27—1).) Illinois law also provides that qualified trust companies, such as the bank in the instant case, may be appointed as executors by will and that they should be allowed proper compensation for services performed as executor not to exceed that allowed to natural persons for like services. (Ill. Rev. Stat. 1973, ch. 32, pars. 287, 291.) However, a determination of the "reasonable compensation" to be allowed any executor of an estate is a matter peculiarly within the broad discretion of the probate court. (*In re Estate of Bonnett* (1977), 52 Ill. App. 3d 393, 398, 367 N.E.2d 524, 528; *In re Estate of Brown* (1978), 58 Ill. App. 3d 697, 706, 374 N.E.2d 699, 706.) There is no clear-cut rule to aid the probate court in ascertaining what a reasonable fee should be; it is a determination which must be based on the facts and circumstances of the particular case being considered. (*In re Estate of Brown* (1978), 58 Ill. App. 3d 697, 706, 374 N.E.2d 699, 706-07.) The factors to be weighed by the probate court in making this determination include the size of the estate, the complexity of its administration, the skills used, the opinion testimony of those familiar with that particular type of work (*In re Estate of Venturelli* (1977), 54 Ill. App. 3d 997, 1004, 370 N.E.2d 290, 295), the time required and the diligence, good faith and reasonable prudence of the one requesting the fee (*In re Estate of Brown* (1978), 58 Ill. App. 3d 697, 706-07, 374 N.E.2d 699, 707). In order to reverse the allowance of an executor's fee a reviewing court is required to find that the trial court's determination is manifestly or palpably erroneous. *In re Estate of Brown* (1978), 58 Ill. App. 3d 697, 707, 374 N.E.2d 699, 707; *In re Estate of Bonnett*, (1977), 52 Ill. App. 3d 393, 399, 367 N.E.2d 524, 529.

The evidence introduced at the hearing established that in administering this estate the Bank prepared the inventory, the Federal estate tax return, the Illinois inheritance tax return and the final account. It also paid routine debts, collected interest and dividends, sold securities and kept records of these transactions. An officer of the Bank testified he also made some 50 two-hour visits to Marie Kottrasch at her home, usually at her request, for the purpose of explaining matters regarding

administration of the estate about which she had raised questions. Other evidence was that the Bank was required to review, discuss and sign a petition to reform the will, prepared by attorney Schmidt, which would allow it to conform with recently enacted Federal tax laws regarding charitable remainder trusts and that it also had to make complex calculations to determine the value of the charitable remainder trust. A representative of the Bank also appeared at a hearing on the inheritance tax return.

No records or estimates of the amount of time involved in rendering these services, other than the visits to Marie Kottrasch, were presented to the trial court, nor were any expert opinions introduced relating to the reasonable value of the services performed. The only evidence presented as to how its claimed $30,000 fee was computed by the Bank was that the Bank's printed schedule of executor's fees, which was based on a set percentage of an estate's gross value, indicated they should charge a fee of $21,500 for administration of an estate of this size. The Bank then further determined that certain of the services it rendered were what it termed "unusual services," such as those connected to reformation of the will, calculation of the value of the charitable remainder trust and appearance at the hearing on the inheritance tax return, and that an additional charge of $8,500 was appropriate compensation for these services. No evidence was introduced as to how this additional amount was computed.

■■ Although, as we have described, there was evidence presented to the trial court describing the various services rendered by the Bank in administering the estate, there was no evidence presented in support of the amount of money it claimed to be a reasonable fee for its services other than the recommendations of the fee schedule presumably adopted by its own board of directors. In this regard, it has been established that fee schedules based on the value of an estate, without regard to the actual value of the services rendered, cannot be used as the primary basis for fixing reasonable compensation to be paid executors under the statute. (*In re Estate of Brown* (1978), 58 Ill. App. 3d 697, 710, 374 N.E.2d 699, 709; *In re Estate of Edwards* (1942), 312 Ill. App. 645, 650, 39 N.E.2d 72, 74; *In re Estate of Bonnett* (1977), 52 Ill. App. 3d 393, 398, 367 N.E.2d 524, 528.) In *In re Estate of Brown* the corporate executor employed a fee schedule as an aid in formulating its claimed fee and the court found that the use of the schedule was not improper where it was manifest that the requested fee was based primarily upon the value of the services provided by the executor rather than the schedule.

■■ We believe that in making its determination of reasonable compensation to be awarded an executor for services rendered, based

upon the relevant factors we have mentioned, the trial court can give little weight to the recommendations of a fee schedule based on a set percentage of an estate's value. An executor's fee must be based upon the reasonable value of services rendered to each estate and a set percentage fee schedule is hardly probative of such value in a particular case.

■■ Although we note the trial court stated during the hearing that the Bank's fee schedule was "something to look at and that's about all," it is not clear from the record how the court determined the reduced fee should be $20,000, which approximates the amount of $21,500 provided for an estate of $900,000 in the schedule. While some facts relating to the services performed, the nature of the estate's assets, the responsibility assumed, the complexity of the duties and the results obtained are present, and would be helpful in judging the appropriateness of an executor's fee in this case, there is a basic, glaring omission of evidence relating to the time spent by various representatives of the Bank in administering the estate. In recent cases which review the reasonableness of fees set by a trial court, the element of time expended by the party requesting the fee, as shown by their time records, has been regarded as the factor of greater importance. *Fiorito v. Jones* (1978), 72 Ill. 2d 73, 377 N.E.2d 1019 (reasonable fee for bank appointed by court as trustee of protest fund in class action suit and its attorneys; also attorneys' fees for plaintiffs' attorneys); *In re Estate of Weber* (1978), 59 Ill. App. 3d 274, 375 N.E.2d 569 (reasonable compensation for conservator of estate of person adjudged an incompetent); *In re Estate of Hackett* (1977), 51 Ill. App. 3d 474, 366 N.E.2d 1103 (reasonable compensation for person who served as both executor of estate and attorney for executor); *Slater v. Jacobs* (1977), 56 Ill. App. 3d 636, 371 N.E.2d 1054 (reasonable attorneys' fees based on *quantum meruit* theory); *Leader v. Cullerton* (1976), 62 Ill. 2d 483, 343 N.E.2d 897 (reasonable attorneys' fees in class action suit).

■■ Furthermore, the trial court did not allow Ramsay to present evidence of the sums charged decedent by the Bank during his lifetime for its work in maintaining his custodial account on the ground that it was not relevant. This account contained nearly all of his assets and they were actively managed by the Bank for some time prior to his death; by way of an offer of proof Ramsay submitted to the court that Kottrasch was charged less than $2,000 per year for this service. We believe it was error to exclude this evidence which might well be relevant in determining a reasonable fee for services performed in administering his estate, to the extent that they were similar to those performed during his life. It would seem to have a bearing on an understanding of the time spent on certain tasks and their complexity. Upon such a record we are unable to accurately review the trial court's award of $20,000 to the Bank in this case

and the order setting the Bank's fee must be reversed and the cause remanded for a new hearing where the relevant factors we have discussed may be considered by the trial court.

■■ Although no direct issue has been raised by the Bank regarding the appropriateness of the $3,000 executor's fee awarded to Ramsay by the trial court, Ramsay's petition has brought before us the question of executors' fees to be allowed and we must also consider that award. Ramsay lived in California during the period of the administration of the estate and it appears his only involvement with the estate was by correspondence with Attorney Schmidt and discussions with him by phone, by consulting with an investment counselor about the various securities owned by the estate and by expressing concern for the executors' fee he and the bank might receive. No fee was requested by Ramsay in his petition nor was any evidence as to the amount of a reasonable fee for his services presented to the trial court, yet the trial court saw fit to award him $3,000. The trial court did not mention any basis for this fee and, again, we are unable to review it and must reverse that determination as being unsupported by the evidence. It may be considered again on remand.

■■ We note that the $40,000 fee awarded to the attorney for the executors, Schmidt, was not challenged by Ramsay's petition in the trial court. However, the trial court was interested in the appropriateness of his fee, considered it and found it proper. It appears that this fee was computed by Schmidt by using a set percentage of the value of the estate as the fee for the "ordinary" work done (no schedule as such was mentioned) and by making an additional charge for "extraordinary" work. There was no evidence as to how any part of that fee was computed other than the use of a percentage of the value of the estate to fix his compensation for legal services. The fee for the attorney for an executor is to be "reasonable compensation" fixed by the trial court (Ill. Rev. Stat. 1973, ch. 3, par. 337 (current version in Ill. Rev. Stat. 1977, ch. 110½, par. 27—2)) and the factors discussed above must also be used in determining such fees. (*In re Estate of Brown* (1978), 58 Ill. App. 3d 697, 706-07, 374 N.E.2d 699, 706-07.) However, the attorney's fee has not been challenged by the parties in this action and the question is not before us on this appeal. Counsel informed this court during oral arguments that such an issue pends in the trial court in this cause. We mention this point, however, because it appears from the record that certain services were performed by both Schmidt and the Bank and fees were claimed by both for such work. In this regard the trial court, on remand, must consider whether compensation claimed by the Bank was for unnecessary, duplicative or inefficient work and reduce its compensation accordingly. See *In re Estate of Minsky* (1978), 59 Ill. App. 3d 974, 978-81, 376 N.E.2d

647, 650-52; *cf. Fioriti v. Jones* (1978), 72 Ill. 2d 73, 89-90, 377 N.E.2d 1019, 1026 (duplicative work by various law firms involved in representation of class action plaintiffs).

■■ Ramsay also contends that the trial court erred in not finding the Bank liable for losses resulting from alleged imprudent sales of estate securities. The evidence was that stocks owned by the estate then valued at $83,000 had been sold by the Bank and that their value had thereafter increased by some $25,000. The evidence also disclosed, however, that in the year preceeding the death of Kottrasch the Dow Jones Industrial Average had dropped some 237 points in a long, steady decline, prompting the Bank to sell certain of the stocks owned by the estate and to reinvest the proceeds more conservatively. In ruling on this issue the trial court stated that the Bank should not be held liable for the increase in the value of these stocks after they were sold because he himself recalled the condition of the stock market at the time in question from past reading and felt the action was not imprudent. Ramsay argues that this determination must be reversed as the trial court considered facts and circumstances not in evidence, citing *Wolfe v. Chicago Transit Authority* (1971), 133 Ill. App. 2d 344, 273 N.E.2d 269 (abstract). We believe the trial court improperly relied upon evidence outside the record in deciding this issue and trust that on remand its decision on this issue will be based upon the evidence presented by the parties.

As stated earlier, it appears the trial court reduced the executor's fee requested by the Bank from $30,000 to $20,000 both because the suggested fee was not supported by the evidence and as a setoff for certain losses it found the Bank had caused the estate to suffer. On remand, when considering the alleged losses the trial court will do so separate and apart from the question of executors' fees so that its determinations of each issue can be accurately reviewed in any subsequent appeal.

Based on the foregoing, the order fixing executors' fees in this case is reversed and the cause is remanded for a new hearing in accordance with the views expressed herein.

Reversed and remanded.

BOYLE and GUILD, JJ., concur.