FLORENCE C. GREGORY, Plaintiff-Appellant and Cross-Appellee, *v.* FIRST NATIONAL BANK AND TRUST COMPANY, Trustee, Defendant-Appellee and Cross-Appellant.

Second District    No. 79-448

Opinion filed June 9, 1980.

958

Wellman and Englesvold, of Rockford, for appellant.

Pedderson, Menzimer, Conde, Stoner & Killoren, of Chicago (Dale F. Conde and Robert A. Calgaro, of counsel), for appellee.

Mr. JUSTICE VAN DEUSEN delivered the opinion of the court:

Plaintiff, Florence C. Gregory, filed suit in equity against defendant First National Bank of Rockford as trustee under an agreement with Howard C. Gregory (husband of plaintiff), dated February 23, 1965, known as Trust "B". The complaint charged various breaches of trust and unreasonable and excessive fees. Defendant bank denied the allegation of breaches of trust and alleged that its fees were usual, customary and reasonable. After a bench trial, the trial judge entered its order: Paragraph

approved the annual fee of the bank of $3,376.14 for the year ending February 23, 1975; paragraph 2 granted judgment for plaintiff in the amount of $333.52 for failure of trustee to apportion its fee for the year ending February 23, 1974, and charging plaintiff with the 1973 personal property taxes less credits; paragraph 3 denied plaintiff's claim for damages because of trustee's unauthorized sale of stock subscription rights; paragraph 4 granted judgment in favor of plaintiff and awarded her $2,115.56 as compensation for interest paid on funds borrowed in order to pay inheritance taxes when defendant bank delayed in delivering any part of the principal of trust "B"; paragraph 5 awarded the defendant bank a reasonable distribution fee of $4,500. Post-trial motions were denied, and plaintiff appeals from paragraphs 1, 3 and 5 of the court's order and defendant cross-appeals from paragraphs 2, 4 and 5 of said order.

On February 23, 1965, Howard C. Gregory established two trusts with the defendant bank. We are concerned here only with trust "B" which had a value, at its inception, of approximately $500,000, with a sizable amount of the corpus concentrated in the stock of J. L. Clark, a company with which Howard Gregory had been associated. According to the trust's provisions, Howard Gregory retained the income from the trust for life and upon his death the income was to be paid to his wife, the plaintiff. Mr. Gregory also retained the right to revoke the trust or appoint the principal thereof to himself, but only with the written consent of plaintiff. The trust further provided that, upon the death of Howard Gregory, plaintiff would receive the power to appoint all or a part of the trust estate to herself or to others.

Article VII of the trust provided that the defendant was to receive reasonable compensation. The trust also provided that, during the lifetimes of Howard C. Gregory and the plaintiff, the defendant would have purely ministerial functions with regard to the administration of the trust. Upon the death of both Gregorys, the trust granted defendant the authority to assume all normal and customary powers of the trustee.

On July 12, 1972, Howard Gregory was granted a divorce from plaintiff and the divorce decree eliminated all rights of plaintiff in the trust. Plaintiff appealed the divorce decree and on November 3, 1972, an order staying the enforcement of the divorce decree was entered. On February 2, 1974, while the divorce case was still pending on appeal, Howard Gregory died and the executor of his estate was substituted as a party in his place. On December 12, 1974, this court reversed the divorce decree, holding that neither party was entitled to a divorce. After petitions for rehearing and for leave to appeal to the supreme court were denied, the mandate of this court reversing the divorce decree was filed in the trial court on April 24, 1975.

Upon the death of Howard Gregory, the defendant assumed active management and control of the trust pending the outcome of the divorce litigation. For this period of time, February 23, 1974, through February 23, 1975, the defendant charged a fee of $3,376.14, which was based on a percentage of the value of the trust assets, at that time worth approximately $1.2 million, less one-third, due to the large concentration in a single stock. The percentage was computed according to a set fee schedule established by the bank.

Subsequent to the mandate of this court reversing the divorce decree, the defendant made several distributions of trust income over an extended period of time but did not distribute any principal from the trust until December 19, 1975, at which time sums in excess of $889,000 were tendered to plaintiff. Also subsequent to the reversal of the divorce decree, plaintiff tendered a letter of direction and appointment to the bank revoking the trust but defendant took no action in response to it. On March 26, 1975, after the supreme court denied leave to appeal, plaintiff sent a second letter of direction and appointment to defendant bank.

Plaintiff's initial contention is that the defendant violated the terms of the trust in assuming active control thereof prior to the death of the plaintiff. Article IV of the trust agreement essentially states that the defendant bank should not assume active control of the trust until and upon the death of both Howard and Florence Gregory. Thus, plaintiff contends that defendant violated explicit terms of the trust, when it assumed active management and control of the trust after Howard Gregory's death, and therefore it should not be compensated.

Prior to the entry of the divorce decree, plaintiff had full power over the trust upon the death of her husband, and during her husband's life, her consent was required to revoke the trust. The divorce decree effectively eliminated all rights which she possessed in the trust; however, the enforcement of this decree was subsequently stayed on November 3, 1972.

■■ ■ It is well established that a stay of enforcement or a supersedeas suspends the efficacy of a judgment and preserves that status quo pending a determination of the appeal. It restrains an appellee from affirmative action to enforce his judgment but it does not impair the validity or effect of the judgment itself. (*Nemanich v. Long Grove Country Club Estates, Inc.* (1970), 119 Ill. App. 2d 169, 177.) Clearly, the stay would not authorize what the judgment or decree prohibits the appellant from doing. *People ex rel. Finn v. David* (1927), 328 Ill. 230, 234; see also *Western United Dairy Co. v. Miller* (1963), 40 Ill. App. 2d 403, 411-12.

■■ ■ In the instant case, the stay of enforcement effectively prevented Howard Gregory from revoking the trust without the consent of his wife, although he attempted to do so nevertheless. However, the stay did not

reverse the decree itself; consequently, plaintiff did not have any affirmative right to assert her interest in the trust upon the death of her husband. Under the unusual circumstances created by the death of Mr. Gregory and the contested divorce decree, it was necessary that someone assume active management of the trust pending the outcome of the appeal. Defendant did so upon the advice of counsel, although proper procedure would have dictated that it seek permission and supervision of the court. Under these circumstances, it appears that the trial court would have authorized the defendant to assume active management of the trust pursuant to the terms of the trust, and in granting the bank a fee, the court did, in effect, review and approve the bank's conduct in so acting. We cannot say that the court erred in implicitly approving such conduct on the part of the defendant or finding that a fee was allowable to the defendant for such services.

Plaintiff next contests the reasonableness of the $3,376.14 administrative fee assessed in the year subsequent to Mr. Gregory's death. Article VII of the trust provided that the defendant was to receive reasonable compensation. Plaintiff argues that the fee was based solely on a percentage of the value of the securities without regard to the value of services rendered. It does seem clear from the evidence that the defendant bank did initially compute its fee on the basis of a fee schedule using a percentage of the value of the assets, then deducted one-third because of the large block of J. L. Clark stock.

This court made clear, in the case of *In re Estate of Kottrasch* (1978), 63 Ill. App. 3d 370, 374, that fee schedules, based on the value of an estate without regard to the actual value of services rendered, cannot be used as a primary basis for fixing reasonable compensation to be paid to executors under the statute. The element of time expended by the party requesting the fee has been regarded as one factor of importance. (*In re Estate of Kottrasch* (1978), 63 Ill. App. 3d 370, 373; *cf. Fiorito v. Jones* (1978), 72 Ill. 2d 73, 88-89.) In light of *In re Kottrasch*, a prudent executor or trustee should keep time records. This does not mean, however, that where such records have not been kept, particularly at a time when reliance on fee schedules was quite common, that the failure to keep time records should deny a trustee or executor his fee. For example, in *In re Estate of Brown* (1978), 58 Ill. App. 3d 697, 710, the court found that the use of a fee schedule, as an aid in formulating claimed fees, was not improper where it was manifest that the requested fee was based primarily upon the value of the services provided by the executor rather than the schedule. In the case of *In re Estate of Kottrasch*, no evidence, other than the fee schedule, was introduced with respect to the reasonable value of the services performed. This court, in *In re Kottrasch*, outlined the standards which should be applied in the determination of reasonable

compensation to be granted any executor and such standards are equally applicable in determining the reasonable compensation to be awarded in this case. The court stated:

> "However, a determination of the 'reasonable compensation' to be allowed any executor of an estate is a matter peculiarly within the broad discretion of the probate court. (*In re Estate of Bonnett* (1977), 52 Ill. App. 3d 393, 398, 367 N.E.2d 524, 528; *In re Estate of Brown* (1978), 58 Ill. App. 3d 697, 706, 374 N.E.2d 699, 706.) There is no clear-cut rule to aid the probate court in ascertaining what a reasonable fee should be; it is a determination which must be based on the facts and circumstances of the particular case being considered. (*In re Estate of Brown* (1978), 58 Ill. App. 3d 697, 706, 374 N.E.2d 699, 706-07.) The factors to be weighed by the probate court in making this determination include the size of the estate, the complexity of its administration, the skills used, the opinion testimony of those familiar with that particular type of work (*In re Estate of Venturelli* (1977), 54 Ill. App. 3d 997, 1004, 370 N.E.2d 290, 295), the time required and the diligence, good faith and reasonable prudence of the one requesting the fee (*In re Estate of Brown* (1978), 58 Ill. App. 3d 697, 706-07, 374 N.E.2d 699, 707). In order to reverse the allowance of an executor's fee a reviewing court is required to find that the trial court's determination is manifestly or palpably erroneous. *In re Estate of Brown* (1978), 58 Ill. App. 3d 697, 707, 374 N.E.2d 699, 707; *In re Estate of Bonnett* (1977), 52 Ill. App. 3d 393, 399, 367 N.E.2d 524, 529." 63 Ill. App. 3d 370, 373.

The question in this case is not limited to the manner in which the defendant bank initially determined the amount of its fee, but rather what evidence was submitted to the trial court, so that the court could determine the reasonableness of the fee. During the year of the bank's active management and administration of the trust, the assets of the trust were valued at approximately $1.2 million. Both the vice-president in charge of the trust department at the time actual control of the trust assets was assumed and the present head of the defendant bank's trust department were familiar with the activities of the bank in relation to this trust. Each testified that the sum of $3,376.14 was a usual, customary and reasonable charge for the services rendered. In addition, the defendant presented two expert witnesses, both heads of trust departments of other banks, who also testified that the $3,376.14 was a reasonable and customary annual administrative fee at the time and locale in question. Plaintiff's expert witness, also the head of a trust department at a bank, testified that, as of July 1, 1977, his bank charged fees based on hours expended and services rendered, although the value of assets was also

considered in determining the annual charge. He added that, while his bank had taken the position that time spent is a measurement, risk and responsibility as they relate to the value of the trust assets are also factors. He stated that he could not determine whether the fee charged was reasonable because that determination is based on time involved and services rendered. While other evidence disclosed that the bank charged only a $400 annual fee during the first nine years of the trust, such was the charge while Howard C. Gregory was still alive and actively managing the trust, and the bank's duties at that time were primarily ministerial.

■■ Additional evidence was presented in this case that was lacking in the case of *In re Estate of Kottrasch*, particularly the opinion of experts. Based upon the evidence presented, the trial court's determination in paragraph 1 of its order that the sum of $3,376.14 was a reasonable fee, was not manifestly or palpably erroneous.

We reach the same conclusion with reference to paragraph 5 of the trial court's order awarding defendant $4,500 for distribution fees. Plaintiff contends that the trial court's award is unwarranted due to the manifest lack of skill which defendant exhibited in administering the estate. In contrast, defendant argues that its fees were clearly reasonable and consequently the trial court erred in reducing the distribution fee from $9,824.52 to $4,500.

We have reviewed the evidence pertaining to this issue. On this issue, too, the defendant bank had applied a fee schedule in determining its charge; therefore, much of our discussion on this subject, in dealing with the allowance of the $3,376.14 administrative fee, is applicable to this issue and need not be repeated. In addition, the fact that the trial judge substantially reduced the fees which defendant bank sought is a clear indication that the trial court considered the evidence presented by plaintiff with respect to the defendant's alleged lack of skill. Again, having considered all the evidence, we cannot conclude that the trial court's finding that defendant bank is entitled to a distribution fee in the sum of $4,500 was against the manifest weight of the evidence.

■■ Regarding arguments made and evidence presented by plaintiff with respect to defendant's alleged lack of skill, it is noteworthy that it is in that context only that plaintiff makes any reference to the alleged unauthorized sale by defendant of certain stock subscription rights. Plaintiff's brief never addressed this issue as a separate basis for reversal of the trial court's order, although her notice of appeal purports to request a separate review of and ruling upon this issue. Having failed to argue this point, such issue is waived. (Ill. Rev. Stat. 1977, ch. 110A, par. 341(e)(7); *Rudolph v. Gersten* (1968), 100 Ill. App. 2d 253, 270-71.) Moreover, defendant points out that, while plaintiff had the burden to prove up damages (*cf. Pathman Construction Co. v. Hi-Way Electric Co.* (1978), 65

Ill. App. 3d 480, 488; *Crosby v. City of Chicago* (1973), 11 Ill. App. 3d 625, 629), she never did so on this issue, but rather stated in her reply brief that she "does not wish to press the point as to damages." Under these circumstances, this court need not consider this issue.

Defendant has also cross-appealed from the trial court's award of $2,115.56 to the plaintiff due to the defendant's unreasonable delay in distributing the principal of the trust. The trial court determined that the period of time between September 30, 1975, the date upon which the Illinois inheritance tax return was approved by the court, and December 19, 1975, the date upon which an initial distribution of the principal of approximately $889,000 was made, was an unreasonable delay for distribution of the principal. Consequently, the court concluded that the interest paid by the plaintiff on a $56,000 loan, obtained in order to pay inheritance taxes during that period, was attributable to the unreasonable delay in the distribution.

The facts indicate that the mandate of the appellate court reversing the divorce decree was filed on April 24, 1975. From April 29 to November 6, 1975, defendant periodically distributed a total sum of $75,000 in trust income to the plaintiff. However, as stated above, the first distribution of principal was not made to plaintiff until December 19, 1975. Defendant's witness, Nathan McClure, testified as to problems in procedures involved in making the distribution and we have considered them. Evidently, the trial court felt that, after the court's approval of the Illinois inheritance tax return, the defendant could have made a partial distribution of the trust principal in order to defray plaintiff's inheritance tax expenses and that such delay in distribution by defendant caused her to make the loan. In analyzing the correctness of the trial court's determination, we have examined several of the major authorities which deal with this issue. The Restatement (Second) of Trusts §345, Comment a (1959), states:

> "The trustee is not under a duty to make a distribution of the whole estate until he has had an opportunity to make an accounting and to obtain a decree of the court approving the distribution. It is the duty of the trustee, however, to make his final accounting with reasonable promptness.
>
> The trustee is not necessarily justified, however, in withholding the whole of the trust estate from distribution until a final accounting. To the extent that a distribution of a part of the property can be made without risk to the beneficiaries or to the trustee, he should make such distribution. Thus, if it is clear that a certain beneficiary is entitled to receive a certain part of the trust estate, the trustee is not justified in withholding such part from

distribution merely because the total amount which the beneficiary is to receive has not been ascertained."

Scott on trusts states:

"When the time for the termination of the trust has arrived, it is the duty of the trustee to wind up the trust and make distribution of the trust property as soon as he reasonably can do so. Whether the trustee has been guilty of an improper delay in winding up the trust depends upon all the circumstances. Where the estate is large and where property must be sold prior to disposition, particularly where the property is not readily salable, where it is difficult to ascertain the proper distributees, or where the estate is involved in litigation, the trustee can properly take more time before the trust is wound up than where the circumstances make the winding up of the trust a simple process. The trustee, before he makes the final distribution of the whole of the trust property, is entitled to have the court pass upon his accounts and make a decree of distribution for his protection." (4 Scott, Trusts §345.1, at 2741 (3d ed. 1967).)

With these rules in mind, it was not unreasonable for the court to conclude that the defendant could have made a partial distribution of the principal immediately subsequent to court's approval of the Illinois inheritance tax return on September 30, 1975. There was no question as to the distributee entitled to the principal of the trust, as plaintiff had sent a letter of direction and appointment to the bank on March 26, 1975, appointing herself as trustee, and requesting delivery of the assets. Bogert on trusts states:

"The trustee who delays in making distributions on trust termination may be held liable for interest. * * *" (Bogert, Trusts §1010, at 580 (2d ed. 1962).)

(See also In re Ducker's Will (1957), 3 App. Div. 2d 852, 161 N.Y.S.2d 549; In re Brockway's Will (1952), 111 N.Y.S.2d 849; In re Kenin's Trust Estate (1942), 343 Pa. 549, 23 A.2d 837.) Again, we cannot hold that the granting of judgment in paragraph 4 of the trial court's order in favor of the plaintiff for $2,115.56 as compensation for interest paid on funds borrowed in order to pay inheritance tax was against the manifest weight of the evidence.

Under count II of the second amended complaint, plaintiff complained that defendant failed to apportion its annual fee of $400 for the year ending February 23, 1974, as provided in the Principal and Income Act (Ill. Rev. Stat. 1977, ch. 30, par. 172(1), (4)) and that the personal property tax charged against her in the amount of $155.32 was for the year 1973 during which time Howard Gregory was the income beneficiary; plaintiff concluded that accordingly Howard Gregory was liable for the entire amount. The trial court granted judgment in favor of

plaintiff in the amount of $333.52 for failure to apportion fees and personal property taxes. This award was based on a finding that the bank's charges were contrary to the statutory requirements.

Defendant contends that no proration pursuant to section 14(4) of the Principal and Income Act is necessary, since section 2 of the Act (Ill. Rev. Stat. 1977, ch. 30, par. 160) provides, in effect, that the settlor has the authority to direct the manner of ascertainment of income on principal, or grant discretion to the trustee, or any other person, to apportion expenses between income and principal in successive income beneficiaries.

Article IV(h) of trust B grants to the trustee discretion "to determine the manner of ascertainment of income and principal in the apportionment between income and the principal of all receipts and disbursements and to select an annual account." Subsection N of Article IV gives the trustee the authority to deduct and pay out of any money belonging to the trust, all amounts due for any taxes. Plaintiff contends that such provisions of the trust agreement are not applicable because the bank was acting without authority as trustee. We have already held in this matter that, under the unusual circumstances created by the death of Mr. Gregory, it was necessary that someone assume active management of the trust pending the outcome of the appeal of the divorce case and final resolution thereof. We have also held that the trial court, in granting and approving fees to be paid to the defendant bank for acting as trustee during this period of time, did implicitly approve the action of the bank as trustee. Under such circumstances, we further hold that the bank was entitled to exercise all of the powers granted the trustee by the trust agreement, including all discretionary authority granted therein. We therefore find that the court erred in concluding that the defendant bank violated the statutory requirements.

Accordingly, we vacate and set aside paragraph 2 of the trial court's order awarding plaintiff $333.52 but affirm paragraphs 1, 3, 4 and 5 of that order.

Affirmed in part and vacated in part.

SEIDENFELD, P. J., and WOODWARD, J., concur.