**ESTATE OF Linea A. DAVIS.**

Supreme Judicial Court of Maine.

Argued May 6, 1986.

Decided June 2, 1986.

Doyle & Nelson, Jon R. Doyle, (orally), Michael J. LaTorre, Augusta, for B. Harrington and J. Harrington.

MacMichael & Talbot, James MacMichael, (orally), Skowhegan, for Stuart Hayes.

James E. Tierney, Atty. Gen., Stephen L. Wessler, Asst. Atty. Gen., Augusta, for amicus curiae.

Before NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

WATHEN, Justice.

On a petition to review fees filed by personal representative Stuart E. Hayes, the Somerset County Probate Court approved a fee of $44,700 for services as personal representative of the estate of Linea A. Davis. Benjamin D. Harrington, Sr., and James B. Harrington, Jr., residual beneficiaries under the will of Linea Davis, appeal the Probate Court's order, challenging the reasonableness of the fee, which Hayes admitted was based on a fixed percentage of the decedent's estate, under the Maine Probate Code. We conclude that the court erred in its determination of reasonableness, and accordingly, we vacate the Probate Court's order.

Hayes, an attorney, testified that he calculated his fee on a percentage basis. From decedent's gross estate, valued at $1,388,000, he deducted a total of $590,400 attributable to real and personal property situated in Florida, leasehold property located in Maine, and lifetime transfers made by the decedent. He then charged five percent of the remaining $797,600 value of the estate and five percent of $96,000 in income earned by the estate, for a total fee of $44,700.

Hayes testified that the handling of the Davis estate required performance of numerous tasks. The will listed many charities as beneficiaries but did not provide addresses for the various charitable legatees. Name changes increased the difficulty of locating some of the charities. In addition, payment to one individual beneficiary was impossible because she was incompetent and, as best Hayes could ascertain, did not have a representative to handle her affairs. The federal estate tax return had to be prepared under some time pressure due to delay in resolving a dispute between beneficiaries regarding the valuation of certain property. Hayes also testified that he encountered difficulty in obtaining information from various institutional trustees regarding four trusts created by decedent during her lifetime.

With regard to certain leasehold property held by the estate, Hayes testified that he had to negotiate the transfer of the leases to the beneficiaries and also described becoming embroiled in a dispute between beneficiaries as to whether the personal representative should undertake repairs on the leased property. Hayes was also responsible for overseeing the maintenance and subsequent sale of Florida real estate. Finally, Hayes testified that he timed certain distributions to minimize the beneficiaries' ultimate tax liability.

The record reveals that Hayes was familiar with the decedent's estate. He had acted as personal representative of the estate of decedent's husband in 1978. Thereafter, he prepared decedent's will in which he was named personal representative. Later, the decedent granted him a power of attorney to handle her financial affairs. Pursuant to the power of attorney, he had maintained the decedent's Florida real estate and had taken steps toward eventual sale of that property. After decedent's death, the maintenance arrangements previously made with respect to the property were simply continued. In addition, he stated that he did not participate in the actual sale of the property. Hayes stated that he was familiar with the trusts that the decedent created during her lifetime, having drafted one or two of them and having prepared income tax returns for all of the trusts.

Hayes admitted that, in general, the negotiations involved in handling the estate were not particularly difficult. He also stated no tax issues were presented beyond those normally encountered in estate work and that, in fact, the estate presented no novel legal issues of any kind. At the time of hearing on his petition, Hayes had spent 112 hours on the estate. In addition,

Hayes' secretary and bookkeeper had 100 hours and 35 hours, respectively, invested in the case.

The Probate Court made the following factual findings: Attorney Hayes is an experienced, able, and reputable practitioner of probate law. Personal representatives in the locality customarily charge five percent of the taxable estate for their services. Hayes and his staff spent approximately 250 hours working on the estate. The estate required considerable skill on the part of the personal representative and was handled in an efficient and competent manner. Finally, the court found that under the circumstances of this case, the fee charged constituted reasonable compensation for Hayes' services as personal representative.

The Harringtons argue that the Probate Court's decision must be vacated because the personal representative based his fee on a percentage of the estate, a practice the Legislature has sought to eliminate. We agree that with the enactment of the Maine Probate Code in 1981, the Legislature intended to abolish the prevailing practice of determining compensation for personal representatives as a percentage of the estate and to substitute a system based on reasonable compensation.

Prior to 1981, personal representatives were authorized by statute to charge up to five percent of the personal assets of an estate for their services. 18 M.R.S.A. § 554, *repealed by* P.L. 1979, ch. 540 (eff. January 1, 1981). A commission created by the Legislature to study and recommend changes in Maine's probate law urged a change in the prevailing system as follows:

> One important, and highly undesirable, aspect of the ... present Maine system is the tying of compensation to various percentages of the estate's value. It is precisely this kind of approach that has led to criticism of probate expense and has given rise to anti-trust problems when used as a general and pervasive

standard for attorneys' fees throughout the bar. ... Compensation should be based on the amount and value of the work done, under a variety of relevant circumstances.

Maine Probate Law Commission, *Report of the Commission's Study and Recommendations Concerning Maine Probate Law* 305 (October 1978). The Maine Probate Code, enacted in 1981, implemented the commission's recommendation regarding fees for personal representatives. Section 3–719 states that a personal representative "is entitled to reasonable compensation for his services." 18–A M.R.S.A. § 3–719 (1981). Section 3–721 sets forth the following criteria for determining the reasonableness of a fee:

> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the service properly;
>
> (2) The likelihood, if apparent to the personal representative, that the acceptance of the particular employment will preclude the person employed from other employment;
>
> (3) The fee customarily charged in the locality for similar services;
>
> (4) The amount involved and the results obtained;
>
> (5) The time limitations imposed by the personal representative or by the circumstances;
>
> (6) The experience, reputation and ability of the person performing the services.

18–A M.R.S.A. § 3–721(b) (1981).[1]

■ The current provisions of the Probate Code, along with the legislative history surrounding their enactment, demonstrate that the Legislature intended to abolish the determination of fees for personal representatives on a percentage basis and to mandate that in all cases, such fees be governed by a standard of reasonable compensation. The clear expression of legislative intent is not dispositive of the present case, however, because the order

1. 18–A M.R.S.A. § 3–719 is identical to section 3–719 of the Uniform Probate Code. The formulation of the factors designated in 18–A M.R. S.A. § 3–721(b) for determining the reasonableness of a fee, is not contained in the uniform act. Other states, however, have adopted sim-

of the Probate Court recites consideration of most[2] of the factors set forth in section 3–721 and ultimately finds the fee assessed to be reasonable. The determination of a reasonable fee is reviewed only for abuse of discretion, and the court's factual findings are final unless demonstrated to be clearly erroneous. *Poussard v. Commercial Credit Plan, Inc.,* 479 A.2d 881, 884 (Me.1984); *Estate of Tessier,* 468 A.2d 590, 596 (Me.1983).

■ The Probate Court's findings as to the reputation and experience of the personal representative, the time expended and skill required to handle the estate, the efficient manner in which the estate was handled, and the customary fee in the locality are all supported by evidence in the record. Nevertheless, the court abused its discretion in concluding that a fee of $44,700 constitutes reasonable compensation for the services provided in this case.

Section 3–721 places complexity of the services required and the time and skill necessary to perform those services first among the factors to be considered in arriving at a reasonable fee. Courts in other jurisdictions with similar statutory provisions have emphasized that the reasonableness of a fee depends on the services actually performed rather than on the size of the estate. *In re Estate of Painter,* 39 Colo.App. 506, 508, 567 P.2d 820, 822 (1977); *In re Estate of Kottrasch,* 63 Ill. App.3d 370, 374–75, 20 Ill.Dec. 349, 352, 380 N.E.2d 26, 29 (1978). Although the estate in this case cannot be described as simple, the personal representative himself testified that it involved no difficult negotiations or litigation and presented no novel legal questions. In cases such as this, when the services required are routine rather than extraordinary, the amount of time expended should be the predominant

factor. *In re Estate of Painter,* 39 Colo. App. at 508–09, 567 P.2d at 822–23.

The Probate Court found that Hayes and his staff devoted 250 hours to handling the estate. Utilizing this figure, over half of which consists of secretarial and bookkeeping time, the fee amounts to an hourly rate of $180. If only the hours put in by attorney Hayes are considered, the hourly rate exceeds $400. It is evident that in finding such extraordinary hourly compensation to constitute a reasonable fee, the Probate Court relied heavily on the local custom of charging a five percent fee for estate work. Given that sections 3–719 and 3–721 embody a legislative intent to abolish the percentage fee system, any continuing practice of charging percentage fees should carry little or no weight in evaluating the reasonableness of a fee under the new statutory scheme. The Probate Court's reliance on the local custom of percentage charges was improper.

Because we conclude that the Probate Court abused its discretion, we vacate the order and remand for further proceedings. On remand, the personal representative may present evidence as to any additional time expended on the settling of this estate after the date of the original hearing in this case.

The entry is:

Order allowing fee vacated.

Case remanded to the Probate Court for further proceedings consistent with the opinion herein.

All concurring.

---

ilar additions to the Uniform Probate Code. *See, e.g.,* Colo.Rev.Stats. § 15–12–721 (1974); Fla.Stat.Ann. § 733.617 (West Supp.1986).

**2.** The Probate Court made no findings regarding the extent to which work on the estate precluded Hayes from accepting other employment, § 3–721(b)(2), or as to time constraints involved

in handling the estate, § 3–721(b)(5). In his petition to review fees, Hayes admitted that work on this estate did not preclude his accepting other employment. The only evidence in the record as to time constraints was noted above with regard to filing of the federal estate tax return. *See supra* p. 1176.