*In re* ESTATE OF PETER VENTURELLI, Deceased.—(WILLIAM PREY, Ex'r of the Estate of Chelso Gualandi, Deceased, Claimant-Appellant, v. GRANVILLE NATIONAL BANK, Ex'r of the Estate of Peter Venturelli, Respondent-Appellee.)

Third District   No. 76-464

Opinion filed December 2, 1977.

998

Gerald M. Hunter, of Oglesby, for appellant.

John A. Grivetti, Jr., of Hennepin, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from an order of the circuit court of La Salle County accepting the first account and report of the executor of the estate of Peter Venturelli and denying all objections to the report.

Peter Venturelli died October 29, 1973. He left a will dated October 23, 1973, naming the Granville National Bank of Granville, Illinois, as the executor. On November 15, 1973, the will was admitted to probate and the Granville National Bank was appointed executor of the estate. Several claims were filed against the estate. There were seventh class claims in the amount of $41,734.82. One of those claims in the amount of $5,150 was owed to Chelso Gualandi. There were sufficient funds in the estate to pay the seventh class claimants 40 cents for each dollar of the claim.

The decedent had failed to file income tax returns during his entire lifetime and therefore it is doubtful that even the pro-rated amount can be paid the claimants.

Peter Venturelli owned three parcels of real estate located in Oglesby, Illinois. One was located at 116 South Columbia Avenue and contained two residential homes and a warehouse on the premises. The second was located at 151 East Walnut Street, which consisted of a large commercial building with a business area in front and apartment in the rear. The third was located at 202 East Walnut Street on which a large furniture and appliance store was located along with a one-story brick residence and a large garage. The decedent owned the furniture and appliance business and a defunct grocery store located on the 202 East Walnut property. He had operated the retail furniture and appliance business for many years prior to his death.

During the first week of December 1973, the executor commissioned Fred Meyer, the manager of a large furniture store in La Salle, Illinois, to appraise the furniture and appliance business inventory of the decedent's estate. James Venturelli, son of the decedent, was present when Meyer appraised the inventory. Meyer appraised the furniture for which Peter Venturelli had paid. Certain items in the inventory were part of a floor plan which were not inventory. The appraised value was $21,000.

In June 1972, the decedent, in order to obtain a loan, presented a financial statement to the Granville National Bank which listed his

business inventory in the sum of $85,000. During the administration of this estate, it became clear that this financial statement was incorrect. The appraisal showed that the inventory consisted of bad buys, obsolete merchandise and discontinued items. Within 30 days after Peter Venturelli's death it became clear the estate would not have funds to pay all of the creditors.

The executor entered into negotiations with James Venturelli for the purchase of the furniture and appliance business. James received financial advice during this period and he was repeatedly told not to purchase the business from the estate. He nevertheless entered into an agreement whereby he would purchase the inventory, fixtures, and equipment and good will of the appliance and furniture business and the grocery business for the sum of $22,500 plus the assumption of an obligation due the General Motors Acceptance Corporation for appliances in the Venturelli Furniture and Appliance store at the time of Peter Venturelli's death. James also agreed to purchase the real estate from the estate for $25,000 plus assumption of the mortgages on the real estate. The real estate had been appraised at $105,500 and the mortgages due were $60,205.18.

Vesta Venturelli, the widow, was paid a surviving spouse's award of $7,500. This exceeded the minimum award of $5,000. There were also negotiations with the widow in regard to her rights under the will. These concerned the widow's personal property which remained in the marital home, the widow's award, and a parcel of real estate in which the widow claimed an interest. As a result, the widow was paid $7,500. Certain mortgage payments which had been erroneously taken from her were refunded.

The executor filed its first and final account and report on January 18, 1975, and asked for attorney fees in the amount of $7,500 and executors fees in the amount of $5,500. The attorney fees were based in part upon the bar schedule. The attorney's and executor's fees were approved by the court on November 6, 1974, in the amount of $7,500 and $3,500. The executor had been notified by the Internal Revenue Service of the potential claim based on the fraud involved in the decedent's having failed to file the tax returns during his life.

Objections to the account were filed on behalf of Chelso Gualandi. Hearings on the account were held on April 21, 1976, and continued on April 23, May 4, and May 12, 1976. At the hearing the executor amended the account and report from a first and final account and report to a first account and report. The court approved the first account and report and dismissed all objections thereto. The objector filed a notice of appeal in this matter.

The appellant has raised seven points on review:

(1) Whether the trial court erred when it accepted the executor's first account and report after hearing evidence that showed the executor had omitted and not accounted for some of the decedent's assets, had failed to have decedent's assets appraised and was negligent in ascertaining the inventory in the decedent's estate.

(2) Whether the trial court erred when it accepted the executor's account and report when the executor failed to account for the disposition of property of the decedent's business prior to its appointment and failed to account for the profits and losses of the business which the executor managed for an additional 2½ months, without court authority after its appointment.

(3) Whether the trial court erred when it accepted the executor's first account and report which failed to account for the reasonable rental value of the decedent's property during the administration of the estate when the rents to said property were being collected by James Venturelli.

(4) Whether the trial court erred when it admitted into evidence the written appraisal of Vernon L. Bloomstrand over the objections of the creditors and further erred when it approved the executor's first account and report after it was proven that the executor committed waste upon the estate when it privately sold, without advertising the properties for sale, the real estate of the decedent for $22,251.60 and an agreement to assume the mortgages on said properties in the sum of $60,295.18 for a total value of $82,456.78 when said property had an appraisal value of $168,000.

(5) Whether the trial court erred when it accepted the executor's first account and report after the executor failed to prove that the attorney fee of $7,500 charged in handling this estate was reasonable and further failed to prove that its executor's fee of $5,500 was reasonable after the executor's negligence in handling the estate was proved and in both instances failed to prove the nature, extent and value of such services.

(6) Whether the trial court erred when it accepted the executor's first account and report in the payment of a $7,500 widow's award when there was no evidence to support such an award and it further erred when it failed to allow proof of the surviving spouse's financial status in considering the manner suited to the condition of life of the surviving spouse and the condition of the estate.

(7) Whether the trial court erred when it approved the first account and report of the executor when the executor paid the sum of $1,041.30 as reimbursement for mortgage payments on the Gedraitis or Venturelli annex property when said payments were not authorized by the executor and were voluntarily paid by the surviving spouse.

The objector argues that the executor was negligent in the management of the estate. He urges that a corporate executor should use the highest standard of care in the handling of an estate.

■■ It is well established that an executor is the representative of the decedent and all those interested in the estate, such as creditors, heirs, legatees, and devisees. (*First National Bank v. Mottola* (N.D.Ill. 1969), 302 F. Supp. 785; *Olsen v. Hartford Accident & Indemnity Co.* (1938), 368 Ill. 194, 13 N.E.2d 159.) The executor is a fiduciary and as such is held to a high standard. *In re Glenos' Estate* (1964), 50 Ill. App. 2d 89, 200 N.E.2d 65; *Lytton v. Cole* (1964), 54 Ill. App. 2d 161, 203 N.E.2d 590.

■■ The executor must act "with the highest degree of fidelity and with the utmost good faith, but he is held to the exercise of only that degree of skill and diligence which an ordinarily prudent man bestows on his own similar private affairs. Nothing more can be required of him, and if his acts will stand the test of that rule he cannot be held liable for any loss that may be sustained by the estate of his intestate." *Christy v. Christy* (1907), 225 Ill. 547, 552-53, 80 N.E. 242, 243.

■■ The corporate executor is held to no higher standard than the individual executor.

The executor in the instant case did not file an inventory until May 3, 1974. The values listed in the inventory were partially determined by persons other than the executor.

The decedent had no business organization. He had no accounting system, no inventory control and no records. It was impossible for the executor to examine the business records of the decedent's business; therefore, he had to rely upon the representations by James. James Venturelli was the only living person who had any knowledge regarding his father's business. Similarly, since there was great animosity between the widow, Vesta Venturelli, and Peter Venturelli's children by a previous marriage, it was necessary to allow them to determine which household goods were owned personally by Vesta Venturelli, personally by Peter Venturelli, and jointly by them both. This they did at the request of the executor.

The executor did not file an accounting of the profits and losses from the operation of the business because it did not operate the business. It did arrange for the appraisal and sale of the business within 30 days of its appointment. James Venturelli did manage the furniture and appliance business after his father's death and before the sale of the business to him.

The objector argues that the prudent man would have closed the store at least until an inventory had been taken. The trial court found that the executor did that. We believe that the record supports the trial court's finding.

Since the executor could not operate the business, it was faced with letting James operate it or letting the business cease and then possess a vacant building in an area of vacant commercial buildings. In order to solve this problem the executor entered into an oral agreement with James Venturelli whereby James would purchase the commercial inventory of the furniture and appliance business at its appraised value and would lease the real estate from the Venturelli estate on a month-to-month basis if he would pay the mortgage payments. Thus the executor avoided foreclosure on the mortgages. If the business and the real estate were sold in any other way, there could be no guarantee that the purchaser would continue the business operation at the same location. If he did not, the executor would possess a vacant commercial building in an area of vacant and deteriorating commercial buildings.

■■ The trial court found that the executor did act as a prudent man. We believe that the record in this particular instance does support such a finding. We believe that the acts of an executor must be judged in the context in which he acts. See *In re Busby's Estate* (1937), 288 Ill. App. 500, 6 N.E.2d 451.

The objector also complains of lost rents because the rental from the Venturelli properties was collected by James Venturelli and not by the executor. It is true that James collected the rentals. He rented all the real estate on the condition that he receive the rental payments from the tenants and that he pay the mortgage payments on these properties. It has been noted that while the rentals are not listed as receipts on the executor's account, the mortgage payments are not listed as disbursements. The executor argues that this was done in order to prevent foreclosure of the mortgages and to avoid incurring the expense of managing the properties. We find that the record supports the contention of the executor.

■■ The objector also argues that a copy of the real estate appraisal by Vernon Bloomstrand was erroneously entered into evidence. The trial court admitted a copy of the appraisal for the purpose of showing what the executor relied upon in making his decisions. The copy was not admitted for the purpose of showing the truth of the appraisal. We have already said that the acts of the executor must be reviewed in the context in which he acts. In order to do that, the court must know upon which facts the executor relied. The appraisal was admitted for that purpose and we do not find the admission to be error.

The objector argues that the executor was negligent and therefore the attorney's fees and executor's fees are unreasonable.

First, we do not find that the executor was negligent.

■■■ Second, we have carefully reviewed the record in this regard.

The trial court considered this matter. The trial court, in its discretion, sets attorney's and executor's fees. In determining the reasonableness of the fees requested, the court considers the size of the estate, the complexity of the administration, the skill used, the opinion testimony of those familiar with that particular type of work, and other relevant factors. We have examined the record as to the factors considered in this case and do not find an abuse of discretion.

We must make a statement regarding the use of bar association fee schedules. We believe that the United States Supreme Court has mandated their discontinuance. We do not find that the trial court or the executor or the attorney relied solely upon any such schedule in the determination of fees.

■■ The objector argues that the spouse's award of $7,500 exceeds the minimum award. This is true. The present minimum award is $5,000. (Ill. Rev. Stat. 1975, ch. 3, par. 178.) The surviving spouse is unquestionably entitled to $5,000. The award may be higher if the trial court finds that the surviving spouse enjoyed a condition of life prior to the decedent's death, the continuation of which requires the higher award. In addition to providing the widow here with a continuation of her previous lifestyle, the executor disposed of her claim to an interest in a building which was purchased during her marriage to Peter Venturelli. We find no abuse of discretion in the approval of the surviving spouse's award.

■■ Finally, the objector argues that certain reimbursement payments made to Vesta Venturelli were made erroneously because she had voluntarily made those payments originally. The payments were made on a mortgage indebtedness. They were deducted from Vesta Venturelli's bank account by the bank which erroneously assumed that she had an interest in the building which secured the mortgage. Vesta Venturelli did not voluntarily make these payments; the money was taken from her. The mortgage indebtedness was an obligation of the estate and as such the estate was obligated to reimburse Vesta Venturelli.

For the reasons stated above, the judgment of the circuit court of La Salle County is affirmed.

Affirmed.

ALLOY, P. J., and STOUDER, J., concur.