*In re* GUARDIANSHIP OF MARY JANE CONNOR, A Disabled Person.

Fifth District   No. 5—87—0430

Opinion filed June 9, 1988.

Franklin E. Dove, of Dove & Dove, of Shelbyville, for appellant.

David Sutterfield, of Effingham, for appellee.

JUSTICE CALVO delivered the opinion of the court:

Shelby County State Bank, former guardian of the estate and person of Mary Jane Connor (petitioner), and Mary Jane Connor (respondent), the former ward, appeal and cross-appeal from a judgment entered by the circuit court upon the final financial settlement of the respondent's estate. The facts are as follows.

On April 27, 1978, respondent was adjudicated incapable of managing her estate and person so petitioner was appointed her guardian. Although respondent was a resident of the Lakeland Health Care Center at the time of the appointment, she was only an intermittent resident therein until sometime in 1981.

While we are unable to ascertain the precise amount of money available to the estate to pay respondent's nursing home bills, her estate was able to pay the entire nursing home bill without public assistance through December 31, 1983. At this time, respondent's assets consisted of a savings account with a balance of $1,642.81, United States series E savings bonds with a face value of $150, a residence, oil and gas interests which produced a monthly income of $160, a coin collection valued at $175, and assorted personal property of nominal value.

A handwritten memorandum indicates that on or before February 23, 1984, petitioner contacted the Illinois Department of Public Aid in order to determine whether respondent was eligible for medical benefits. The memorandum shows that petitioner was informed by the Department that respondent could qualify for benefits if she had no more than $1,500 in life insurance (actually $1,000 in life insurance benefits, or $1,500 in a prepaid burial plan) or a prepaid burial plan and no more than $1,500 in cash or other assets. Although there is no indication in the memorandum that exemptions were discussed, Lowell Hunsaker, the local public aid administrator for the Department, testified that a public aid applicant's homestead real estate and income-producing property such as respondent's oil and gas interests were exempt from eligibility consideration at the time of the bank's inquiry. Hunsaker further testified that at this time a gravesite, casket, and headstone were not counted toward the $1,500 amount allowed for prepaid burial.

On February 22, 1984, petitioner filed a motion in circuit court requesting leave to sell respondent's residence. On May 2, 1984, peti-

tioner made application for public aid on behalf of respondent. On June 14, 1984, the Department rejected the application. Although petitioner never appealed this ruling or sought clarification of the reasons behind it, Hunsaker testified that the application was rejected because she had more than $1,500 in cash and other assets. Specifically, respondent's residence, which the application valued at $5,000, was considered nonexempt homestead property because an intended sale of residential property expresses an intention on the part of the owner not to return to the residence, thereby rendering the homestead property nonexempt rather than exempt. Hunsaker further testified that absent an intention to sell residential property, the Department ascertains the intention of an individual to return to the residence by asking the individual. If the individual says "yes," then the Department rules that the homestead property is exempt for purposes of determining eligibility.

On March 28, 1985, petitioner submitted a second application for public aid which was approved and made retroactive to December 1984. However, respondent accumulated a nursing home payment arrearage of $3,893.55 during the time prior to her receiving benefits. In an effort to pay the arrearage, petitioner obtained the circuit court's permission to sell the residence privately for $2,500 and to sell the oil and gas interests at a public sale, which grossed $2,200. Part of these proceeds was applied to a $1,500 certificate of deposit for a burial plan which was liquidated shortly thereafter to pay the arrearage. Although the proceeds from these sales exceed the amount of the arrearage, the costs associated with the sale and guardianship expenses made the net amount applied to the arrearage less than the total arrearage. At the time of trial respondent still had an arrearage of $118.35.

On July 24, 1986, petitioner authorized the nursing home to take money from respondent's social security living-expense trust account which had been set aside for her personal needs (*e.g.*, clothing, postage, haircuts, lotion, personal items). Although the nursing home was authorized to take all or part of the $25 per month which was to be paid into this trust account from respondent's monthly social security check, Karen Wendt, the nursing home administrator, testified that they had not applied this money to the arrearage for several months because respondent had no spending money. Ms. Wendt further testified that although respondent's trust account received the $25 per month from petitioner from June 1986 onward, the full monthly amount had not been received since November 1985.

Sometime prior to November 13, 1986, the respondent contacted

Senior Citizens Legal Services because the money in her trust account was insufficient to meet her personal needs. Legal Services sent petitioner a letter dated November 13, 1986, which demanded (1) that the trust account be made current, and (2) that the petitioner pay off the remaining arrearage with funds not belonging to respondent. This letter further told petitioner that petitioner was responsible for the entire arrearage because its improper application for public aid on respondent's behalf resulted in the arrearage. On December 11, 1986, petitioner filed its resignation as respondent's guardian along with its final report on respondent's finances, which showed that respondent's estate had $374.63. This amount represented petitioner's personal contribution toward the amount the trust account was to be reimbursed ($256.28) and the amount still owed on the arrearage ($118.35). On December 15, 1986, respondent filed a motion for hearing on the report of final settlement which alleged as reasons therefore, *inter alia*, that "[petitioner] has spent [respondent's] resources below the exemption permitted by the Illinois Department of Public Aid."

After hearing evidence the circuit court found that petitioner had violated its fiduciary duty to respondent by failing to expeditiously obtain public aid, thereby dissipating respondent's estate. The court ordered petitioner to reimburse the respondent's estate the sum of $1,874.63 plus costs. The petitioner appeals, alleging (1) that the alleged breach of fiduciary duty was improperly pleaded and should have been dismissed, and (2) that the finding that it had breached its fiduciary duty to respondent is contrary to the manifest weight of the evidence.

■ Illinois law is clear that a fiduciary relationship exists between a guardian and a ward as a matter of law and that such relationship is equivalent to the relationship between a trustee and a beneficiary. (*In re Estate of Swiecicki* (1985), 106 Ill. 2d 111, 117-18, 477 N.E.2d 488, 490.) A trustee is obligated to exercise sound judgment and reasonable and prudent discretion over the estate of a beneficiary. (*Merchants Loan & Trust Co. v. Northern Trust Co.* (1911), 250 Ill. 86, 96, 95 N.E. 59, 63.) This obligation must be discharged in a diligent and orderly manner. *Conant v. Lansden* (1951), 409 Ill. 149, 159, 98 N.E.2d 773, 778.

■ Since the law presumes the existence of a fiduciary duty between guardian and ward, the dealings of the petitioner with regard to the final financial settlement of the respondent's estate was to be viewed in light of this duty regardless of whether respondent filed a motion for a hearing on the final settlement. Furthermore, one of the

reasons respondent gave for requesting the hearing was that her net estate at the time of final financial settlement had been depleted far below public aid eligibility requirements. We must therefore conclude that respondent's request for a hearing reasonably informed petitioner of the nature of the claim it was called upon to meet. Accordingly, the respondent's pleading was sufficient to support a claim that petitioner breached its fiduciary duty. Ill. Rev. Stat. 1985, ch. 110, par. 2—612(b).

■ A trial court's findings of fact will not be overturned unless they are contrary to the manifest weight of the evidence. (*Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302, 318, 469 N.E.2d 183, 191.) In the instant case the petitioner failed to fully investigate the possible effect a sale of the respondent's residential real estate would have upon her eligibility for public aid prior to requesting leave to make the sale. The trial court properly could have found that this failure, coupled with the failure to file an appeal from or seek clarification of the reasons for the denial of respondent's first application for public aid, constituted a breach of fiduciary duty which resulted in unnecessary dissipation of estate assets. The trial court's finding that petitioner breached its fiduciary duty to respondent is therefore affirmed. We will now address respondent's issues on cross-appeal.

On cross-appeal respondent alleges (1) that the trial court erred in failing to award her an additional $1,500 so she could acquire a prepaid burial plan, and (2) that the trial court should have either appointed another guardian for her estate or found that she did not need such a guardian.

■ The evidence shows that respondent's estate was able to pay her nursing home bills from 1978 through the time when public aid was first sought. The evidence also shows that on December 31, 1983, respondent's excess cash assets could have been placed in a prepaid burial plan so as to qualify her for public aid. When this evidence is viewed in conjunction with the trial court's proper finding that petitioner's breach of fiduciary duty resulted in unnecessary dissipation of estate assets, it follows that the estate assets, especially the residence and the oil and gas interests, would not have been liquidated to pay the nursing home arrearage but for petitioner's failure to seek public aid for respondent in a diligent and orderly manner. Accordingly, the proceeds from the sale of these assets should have been applied, as fully as possible, to benefit respondent rather than to pay the arrearage caused by petitioner's breach. We therefore conclude that the trial court's order that petitioner reimburse respondent's estate in the

amount of $1,874.63 is contrary to the manifest weight of the evidence and should be modified to include an additional $1,125.37, which represents the difference between the original reimbursement ordered and the $3,000 limit (*i.e.*, $1,500 cash or other assets and $1,500 in a prepaid burial plan) set for public aid eligibility at the time of first application.

■ Since the respondent does have an estate to manage, and since the trial court's order appointed the office of the State guardian to be the guardian of respondent's person, but not her estate, we remand this cause to the trial court for a determination of whether respondent is in need of such a guardian and, if so, who that guardian will be.

The judgment of the circuit court is affirmed as modified, with the cause remanded for further proceedings consistent with the views expressed herein.

Affirmed as modified, and remanded with directions.

HARRISON, P.J., and LEWIS, J., concur.