909 N.E.2d 915 (2009)
In re ESTATE OF Joseph Collins LIEBERMAN, a Minor
(Mary Claire Collins, Plaintiff-Appellant,
v.
Northern Trust Company, Defendant-Appellee).
In re Estate of Megan Collins Lieberman, a Minor
(Megan Collins Lieberman, Plaintiff-Appellant,
v.
Northern Trust Company, Defendant-Appellee).
Nos. 2-07-0451, 2-07-0452.
Appellate Court of Illinois, Second District.
May 28, 2009.
*917 James E. Dahl, Patrick K. Dahl, Dahl & Bonadies, Chicago, IL, for Appellant.
David A. Baker, Ryan M. Harding, McDermott, Will & Emery LLP, Chicago, IL, for Appellee.
Justice McLAREN delivered the opinion of the court:
Plaintiffs, Mary Claire Collins, co-guardian of the estates of Joseph Collins Lieberman and Megan Collins Lieberman, minors, and Megan Collins Lieberman appeal the trial court's order striking plaintiffs' amended objection to the third and final account filed by co-guardian defendant Northern Trust Company. In the objection, plaintiffs alleged that defendant failed to properly and prudently invest millions of the wards' dollars under the prudent-investor rule. The cases of the two estates were consolidated on appeal. We reverse and remand for further proceedings.
In 2000 Joseph and Megan (wards) were involved in a car accident; their father was killed and the wards suffered severe and permanent injuries. Megan received $13,175,477.26 and Joseph received $2,527,504.06 from the party that caused the accident. In addition, Joseph will receive monthly payments of $2,000 beginning at age 18 and payments of $10,000 per month beginning at age 25. In total, Joseph will receive a guaranteed annuity payment totaling $6,898,193.
Defendant was appointed to serve as co-guardian of the wards' estates. On November 1, 2002, defendant received the majority of the wards' assets, a total of $15,702,981.32 ($13,175,477.26 of Megan's estate and $2,527,504.06 of Joseph's estate). Over the next year, defendant placed approximately half of the assets in a taxable short-term investment fund that generated a 1% return after taxes and guardian fees.
On January 9, 2004, defendant and Mary Claire Collins filed their "Current and First Accounts" (first account) regarding Megan's and Joseph's accounts for approval by the probate court. The first account reported that as of October 31, 2003, one year after defendant received the assets, over half of Joseph's assets remained underinvested as cash in defendant's short-term investment account. The first account reported that slightly less than half of Megan's assets remained underinvested as cash in defendant's short-term investment account as of October 31, 2003. Defendant redistributed the funds on its own accord after the first accounting.
The next year, on February 10, 2005, defendant and Mary Claire Collins filed their "Current and Second Accounts" (second account) for approval by the probate court. The court approved both the first and second accounts filed by defendant and Mary Claire Collins.
On August 25, 2005, defendant filed a "Petition For Approval Of The Northern Trust Company's Third And Final Account, Declaratory Relief, Leave to Resign As Co-Guardian, And Appointment of Successor Co-Guardian" (petition). In the petition, defendant sought a declaration that its "allocation, management, and investment *918 of the Estate's assets was prudent, reasonable, and in accordance with Illinois law."
On August 17, 2006, plaintiffs, including Megan who was no longer a ward, filed an objection to the third and final account and prior current accounts. The objection alleged that defendant was accountable for 12 months during which it had "mismanaged" the wards' estates by leaving the assets in a short-term investment fund that yielded a return of about 1% after taxes and guardian fees. The objection challenged the propriety of defendant's management and requested the trial court to surcharge or otherwise enter judgment against defendant for the losses resulting from its excessive investment in a short-term fund as opposed to longer-term investments during the period of November 30, 2002, through December 31, 2003. Specifically, the objection alleged: (1) defendant was a corporate fiduciary that holds itself out as having particular experience and expertise with the investment and management of funds for guardianship estates; (2) defendant was the co-guardian of the wards' estates and was entrusted with the responsibility to invest the wards' assets; (3) defendant, in breach of that duty, inexplicably invested substantial portions of the wards' assets in a short-term investment fund that generated a return of about 1% after taxes and guardian fees between November 30, 2002, and December 31, 2003; (4) defendant had no excuse and no explanation for holding the wards' assets in such short-term investments, because it had sufficient income and other assets to address their needs; and (5) if the funds had been invested in any long-term investment, the funds would have achieved a substantially greater rate of return over the same period.
Defendant filed a motion to strike plaintiffs' objection pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2006)), claiming that the allegations directed against it were insufficient as a matter of law because they failed to state a valid claim upon which relief could be granted. The trial court granted defendant's motion without prejudice.
Plaintiffs filed a second objection that contained the same allegations as the original objection, with this additional language:
"For example: if The Northern had invested these funds in the same fixed income investments in which it had invested portions of [the wards'] other assets, such an investment would have generated a return of over 3% a full 2% higher than Northern's short term investments. By way of a further example, if The Northern had invested these funds in a simple Dow Jones Industrial Average Mutual Fund, such an investment would have increased in value by almost 18% over the same period."
Defendant moved to strike the amended objection pursuant to section 2-615 of the Code, claiming that the language of the amended objection did nothing more than add percentages to plaintiffs' allegations that the return on the wards' assets should have been greater.
The trial court first acknowledged that "a guardian is required to observe that care and diligence in the performance of his duties that a good and conscientious business man exercises in his own affairs, under like circumstances." The trial court then stated that "[t]he standard is essentially the same as the prudent person standard rule." However, the trial court then went on to apply a standard of "bad faith, fraud or acts or omissions constituting gross neglect of the estate that are so unreasonable they cannot be characterized as mere errors in judgment." The trial court found that the objection did not allege *919 that defendant's decisions were the result of bad faith, fraud, or gross neglect, and it granted defendant's motion to strike plaintiffs' objection.
This timely appeal followed.

STANDARD OF REVIEW
Pursuant to section 2-615(a) of the Code, a defendant may file a motion to strike a pleading because it is "substantially insufficient in law." 735 ILCS 5/2-615(a) (West 2006). A section 2-615 motion to dismiss "challenges the legal sufficiency of a complaint based on defects apparent on its face." Marshall v. Burger King Corp., 222 Ill.2d 422, 429, 305 Ill.Dec. 897, 856 N.E.2d 1048 (2006). "In reviewing the sufficiency of a complaint, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts." Marshall, 222 Ill.2d at 429, 305 Ill.Dec. 897, 856 N.E.2d 1048. In reviewing the sufficiency of a complaint, courts construe the allegations in the complaint in the light most favorable to the plaintiff. Marshall, 222 Ill.2d at 429, 305 Ill.Dec. 897, 856 N.E.2d 1048. Therefore, pursuant to section 2-615, a court should not dismiss a cause of action unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. Marshall, 222 Ill.2d at 429, 305 Ill.Dec. 897, 856 N.E.2d 1048. An order granting or denying a section 2-615 motion to dismiss is reviewed de novo. Marshall, 222 Ill.2d at 429, 305 Ill.Dec. 897, 856 N.E.2d 1048.

ANALYSIS
On appeal, plaintiffs argue that the trial court erred by applying an incorrect standard to evaluate the amended objection. Plaintiffs contend that the trial court incorrectly applied a gross-negligence standard requiring plaintiffs to allege that defendant's decisions were the result of bad faith, fraud, or something more than mere errors in judgment. Plaintiffs also contend that the prudent-investor standard should apply rather than the prudent-person standard alluded to.
Because we are reviewing the meaning of a statute, our review is de novo. See Alvarez v. Pappas, 229 Ill.2d 217, 220, 321 Ill.Dec. 712, 890 N.E.2d 434 (2008). When interpreting a statute our primary objective is to ascertain and give effect to the intent of the legislature. Harrisonville Telephone Co. v. Illinois Commerce Comm'n, 212 Ill.2d 237, 251, 288 Ill.Dec. 121, 817 N.E.2d 479 (2004). The most reliable indicator of such intent is the language of the statute, which is to be given its plain and ordinary meaning. Alvarez, 229 Ill.2d at 228, 321 Ill.Dec. 712, 890 N.E.2d 434. We must not consider words and phrases in isolation; rather, we must interpret words and phrases in light of other relevant provisions and interpret the statute as a whole. See Williams v. Staples, 208 Ill.2d 480, 487, 281 Ill.Dec. 524, 804 N.E.2d 489 (2004).
Section 11-13(b) of the Probate Act of 1975 (Probate Act) provides:
"(b) The guardian or other representative of the ward's estate shall have the care, management and investment of the estate, shall manage the estate frugally and shall apply the income and principal of the estate so far as necessary for the comfort and suitable support and education of the ward * * *." 755 ILCS 5/11-13(b) (West 2002).
Section 21-2 of the Probate Act provides:
"(a) It is the duty of the representative to invest the ward's money. A representative is chargeable with interest at a rate equal to the rate on 90-day United States Treasury Bills upon any money that the representative wrongfully or negligently allows to remain uninvested after it might have been invested. Reasonable sums of money retained uninvested by the representative in order to *920 pay for the current or imminent expenses of the ward shall not be considered wrongfully or negligently uninvested."
* * *
(c) A representative may invest only in the types of property specified in Sections 21-2.01 through 21-2.15." (Emphases added.) 755 ILCS 5/21-2(a), (c) (West 2002)).
The relationship between a guardian and his ward is that of fiduciary as a matter of law. In re Estate of Dyniewicz, 271 Ill.App.3d 616, 622, 208 Ill.Dec. 154, 648 N.E.2d 1076 (1995). The relationship between guardian and ward is equivalent to that between a trustee and a beneficiary. In re Estate of Swiecicki, 106 Ill.2d 111, 117, 87 Ill.Dec. 511, 477 N.E.2d 488 (1985). A guardian has an affirmative statutory duty to invest a ward's money, except for reasonable amounts that may be necessary to pay for "the current or imminent expenses of the ward." 755 ILCS 5/21-2(a) (West 2002). Subsection (c) of section 21-2 of the Probate Act provides: "A representative may invest only in the types of property specified in Sections 21-2.01 through 21-2.15." 755 ILCS 5/21-2(c) (West 2002). A guardian is one type of representative. 755 ILCS 5/1-2.15 (West 2002). Section 21-2.12 specifies "stocks" as one of the permitted types of investments. See 755 ILCS 5/21-2.12 (West 2002). This statute applies to all guardians regardless of alleged expertise.
Regarding uninvested money, the Probate Act provides that a representative/guardian must not allow a ward's money to remain uninvested in a negligent or wrongful manner. 755 ILCS 5/21-2(a) (West 2002). With two exceptions, the Probate Act is silent regarding the standard for investment decisions under sections 21-2.01 through 21-2.15. Two of those sections expressly hold the representative/guardian to the prudent-investor standard. 755 ILCS 5/21-2.13, 21-2.14 (West 2002). Section 21-2.13 provides:
"Interests in one or more common trust funds, * * * the Investments of which are not restricted to the investments otherwise authorized for representatives by Sections 21-2.01 [stock] and 21-2.14 [mutual funds] of this Act, provided that the investment in such common trust fund meets the standard of the prudent investor rule for the investment of trust funds." 755 ILCS 5/21-2.13 (West 2002).
Section 21-2.14 contains the same prudent-investor rule regarding investment in mutual funds. 755 ILCS 5/21-2.14 (West 2002).
The standard for the remaining 13 permitted investments has not been established by the statute itself or by an Illinois court. However, the standard of care required in the general management of a ward's estate is well established in the State of Illinois. A guardian must "manage the ward's property with the same degree of vigilance, diligence and prudence as a reasonable man would use in managing his own property." Parsons v. Estate of Wambaugh, 110 Ill.App.3d 374, 377, 66 Ill.Dec. 145, 442 N.E.2d 571 (1982); see also Hughes v. People, 111 Ill. 457, 458 (1885) ("A guardian is not liable for an error in judgment in making investments, where he acts in good faith, and is reasonably prudent under the circumstances"); Dyniewicz, 271 Ill.App.3d at 627, 208 Ill. Dec. 154, 648 N.E.2d 1076 ("A guardian is bound to use ordinary prudence in managing his or her ward's estate and is liable for losses incurred through culpable indifference and negligence"); Means v. Earls, 15 Ill.App. 273, 274 (1884) ("A guardian is bound to use ordinary prudence and diligence in the management of his ward's estate"). Because Illinois case law provides the standard by which guardians *921 must manage their wards' estates generally, we will apply this standard to decisions regarding the limited array of investments permitted by the Probate Act. Application of the reasonable-man, or prudent-person, standard to the remaining 13 permitted investments is in accord with section 21-2(a), which holds representatives/guardians liable for acting in a negligent or wrongful manner. 755 ILCS 5/21-2(a) (West 2002).
Although we do not mandate that a professional standard of care (and the procedural requirements that would come with the standard such as hiring an expert to establish the standard) be applied to defendant, as advocated by the special concurrence, we do agree that the prudent-person standard may to some extent incorporate the characteristics of a particular defendant. In Advincula v. United Blood Services, 176 Ill.2d 1, 22, 223 Ill.Dec. 1, 678 N.E.2d 1009 (1996), the court stated that, generally, the basic standard of care in a negligence case is that of the "ordinarily careful person" or the "reasonably prudent person." The Advincula court further stated:
"To be complete, however, a standard of care must also be subjective, in that it makes proper allowance for the actor's capacity to meet the risk apparent to him, and the circumstances under which he must act. [Citation.]
Accordingly, the basic reasonable person standard allows for and incorporates the physical characteristics of the defendant, himself. [Citation.]" Advincula, 176 Ill.2d at 22, 223 Ill.Dec. 1, 678 N.E.2d 1009.
In light of this discussion in Advincula, even under the prudent-person standard, it is relevant to consider the unique characteristics of a particular defendant, including whether said defendant is a professional.
Additionally, it would be within the trial court's discretion to consider a guardian's professional status when evaluating whether the guardian made a mistake in judgment. A professional guardian would have a more difficult time contending he or she acted in good faith, yet merely made a mistake in judgment that resulted in a loss, if the alleged mistake was one that only a less-skilled investor was likely to make. See In re Estate of Busby, 288 Ill.App. 500, 524-25, 6 N.E.2d 451 (1937) (where the court expressly mentioned the bank's status as a professional fiduciary in rejecting the bank's claim that it merely made a mistake in judgment by failing to sell off speculative stock). Thus, even under the prudent-person standard, the trial court may consider professional status as part of the "circumstances" under which defendant acted if defendant raises a mistake-in-judgment defense.
Plaintiffs urge us to adopt the prudent-investor standard provided in section 174 of the Restatement (Second) of Trusts, which imposes a higher standard for all acts carried out by the greater-skilled trustee. Restatement (Second) of Trusts § 174 (1959). Section 174 states:
"The trustee is under a duty to the beneficiary in administering the trust to exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property; and if the trustee has or procures his appointment as trustee by representing that he has greater skill than that of a man of ordinary prudence, he is under a duty to exercise such skill." (Emphasis added.) Restatement (Second) of Trusts § 174, at 379 (1959).
However, because Illinois case law provides a standard, we need not resort to other sources such as section 174 of the Restatement (Second) of Trusts.
*922 The trial court here was confronted by an issue for which little precedent existed, so it turned to, but ultimately rejected, the Restatement (Second) of Trusts. Restatements are not binding on Illinois courts unless adopted by our supreme court; and, because our supreme court has not adopted the Restatement (Second) of Trusts section 174, it merely provides guidance. See Ziemba v. Mierzwa, 142 Ill.2d 42, 49, 153 Ill.Dec. 259, 566 N.E.2d 1365 (1991); see also In re Marriage of Chrobak, 349 Ill.App.3d 894, 898, 285 Ill.Dec. 369, 811 N.E.2d 1248 (2004). Although as noted we need not resort to such sources, we observe that the Restatement (Third) of Trusts supports our rejection of plaintiffs' position that we apply the prudent-investor standard to guardians. The Restatement (Third) of Trusts narrows its scope to trusts only and distinguishes trusts from other relationships that resemble trusts. The Restatement provides:
"Analogous, nontrust relationships. There are a number of widely varying relationships that more or less closely resemble trusts but are not trusts, although the terms `trust' and `trustee' are often used loosely in relation to some of these relationships. It is important to differentiate trusts from these other relationships because many of the rules applicable to trusts are not applicable to them. * * *
The term `trust' is sometimes used to encompass all fiduciary relationships. This Restatement does not use the term in this broad sense, given that so many of the rules applicable to trustees are not applicable to other fiduciaries. Thus, an executor, guardian, agent, or corporate officer or director is a fiduciary, but the fiduciary duties and relationships involved differ in many ways from those of a trustee." (Emphasis added.) Restatement (Third) of Trusts, Introductory Note, at 5 (2003).
Therefore, the Restatement (Third) of Trusts persuades us that it was intended to apply, narrowly, to trusts and ought not be applied to guardianships.
In addition, the higher standard proposed by plaintiffs, the prudent-investor standard, was expressly included in section 5(a)(1) of the Trusts and Trustees Act (760 ILCS 5/5(a)(1) (West 2002)). Section 5(a)(1) of the Trusts and Trustees Act provides:
"§ 5. Investments. (a) Prudent Investor Rule. A trustee administering a trust has a duty to invest and manage the trust assets as follows:
(1) The trustee has a duty to invest and manage trust assets as a prudent investor would considering the purposes, terms, distribution requirements, and other circumstances of the trust. This standard requires the exercise of reasonable care, skill, and caution and is to be applied to investments not in isolation, but in the context of the trust portfolio as a whole and as a part of an overall investment strategy that should incorporate risk and return objectives reasonably suitable to the trust." 760 ILCS 5/5(a)(1) (West 2002).
The Probate Act, the act that governs here, does not include the prudent-investor standard or any standard regarding the general investment and management decisions of a guardian. However, the legislature expressly applied the prudent-investor rule to only two limited acts of a guardian. Only decisions to invest in common trust funds (section 21-2.13) or mutual funds (section 21-2.14) must meet "the standard of the prudent investor rule for the investment" of such funds. 755 ILCS 5/21-2.13, 21-2.14 (West 2002). Therefore, the legislature chose very specifically to apply the prudent-investor rule only in these two statutory provisions. *923 The investments described in these two statutory provisions are distinguishable from those in the other 13 provisions, as these two provisions entail investments in which the guardian has a financial interest that would reasonably require a higher standard of care. Thus, there is a rationale as to why the prudent-investor rule is set forth only in these two sections.
Given that the legislature included the prudent-investor standard in the Trusts and Trustees Act and omitted it from all but two sections of the Probate Act, we must conclude that the legislature has not definitively adopted a position that would suggest the higher standard should apply. We believe the appropriate standard is the same standard that applies to the general administration of a ward's estate, i.e., the prudent-person standard. In re Guardianship of Connor, 170 Ill.App.3d 759, 763, 121 Ill.Dec. 408, 525 N.E.2d 214 (1988) (the court applied the prudent-person standard to a corporate guardian but not with regard to statutory investments); see also In re Estate of Pirie, 141 Ill.App.3d 750, 766, 97 Ill.Dec. 225, 492 N.E.2d 884 (1986) (the court interpreted a portion of the Probate Act to apply the prudent-person standard to investments by corporate executors; it also agreed that if the prudent-investor standard is to be applied, it should be applied by the legislature and not the court).
In this case, plaintiffs pleaded that defendant was the co-guardian of the wards' money and that it owed a duty to prudently invest it. Yet, defendant invested substantial portions of the wards' assets in short-term investment funds that generated a return of about 1% after taxes and guardian fees between November 2002 and December 2003. Defendant admitted that it invested 54% of Joseph's estate, or $1,315,095.29, in short-term investments. Defendant also admitted that it invested 48% of Megan's estate, or $6,482,689.95, in short-term investments. Defendant provided no explanation for holding the wards' assets in these short-term investments. The wards had sufficient income and other assets to address their current needs. Plaintiffs also alleged that, if the funds had been invested in any statutorily permissible long-term investments, such as the same fixed-income investments in which defendant had invested other portions of the estates' assets, the funds would have achieved a substantially greater rate of return over the same period.
Construing the allegations in the complaint in the light most favorable to plaintiffs (Marshall, 222 Ill.2d at 429, 305 Ill. Dec. 897, 856 N.E.2d 1048), we find that plaintiffs stated a valid claim. As stated above, a guardian is required by law to invest a ward's money. See 755 ILCS 5/21-2(a) (West 2002). Here, plaintiffs alleged that defendant knew that the wards did not need substantial sums of money to address their current needs, and, instead of investing that money in a property that would have yielded a higher return, it decided to invest the money in a property yielding a 1% return. Viewing these allegations in the light most favorable to plaintiffs, we do not believe this is vigilant, diligent, reasonable, or prudent. See Parsons, 110 Ill.App.3d at 377, 66 Ill.Dec. 145, 442 N.E.2d 571. We believe a trier of fact could find that the investment of such a large amount in short-term funds was not reasonable or prudent and could constitute a breach of fiduciary duty.
Contrary to defendant's contention, the fact that the money-market investment was a statutorily permitted investment does not immunize it from liability or limit the requirement that its investments be prudent. Defendant cites only to section 21-2(c) of the Probate Act to support its contention that "a guardian is free, without liability, *924 to invest an estate's assets in any of the statutory investments, in any given mix." Section 21-2(c) provides only: "A representative may invest only in the types of property specified in sections 21-2.01 through 21-2.15." 755 ILCS 5/21-2(c) (West 2002). According to the plain and ordinary meaning of the statute (see Orlak v. Loyola University Health System, 228 Ill.2d 1, 8, 319 Ill.Dec. 319, 885 N.E.2d 999 (2007)), the legislature has merely supplied a list of permissible investment properties. Nothing in the language of the statute indicates that the legislature has abrogated a guardian's duty to choose the properties in a prudent manner, using discretion and investing as would a reasonable man, using vigilance and diligence. See Parsons, 110 Ill.App.3d at 377, 66 Ill.Dec. 145, 442 N.E.2d 571. Section 21-2(c) does not state that any arrangement or proportion of investments in the listed properties is per se prudent, and defendant has not cited to, nor can we find, any statute or Illinois case supporting its proposition.
Defendant contends that the proper standard was enunciated by the trial court as that of "bad faith, fraud or acts of omission constituting gross neglect of the estate that are so unreasonable that they cannot be characterized as mere errors in judgment." Defendant argues that plaintiffs failed to allege that defendant acted in such a manner. Defendant cites Christy v. Christy, 225 Ill. 547, 80 N.E. 242 (1907), and In re Estate of Corrington, 124 Ill. 363, 16 N.E. 252 (1888), to support its position.
After a close reading of Christy, we determine that it supports our position that the prudent-person standard is all that applies and that the wards successfully pleaded that defendant breached its duty. Christy provides, "[an administrator of an estate] is held to the exercise of only that degree of skill and diligence which an ordinarily prudent man bestows on his own similar private affairs." Christy, 225 Ill. at 552-53, 80 N.E. 242. Christy continues, stating that fraud would render the administrator liable (Christy, 225 Ill. at 554, 80 N.E. 242), but fraudulent conduct fits within the parameters of imprudent conduct. Therefore, Christy provides that prudent behavior is the minimum expected of an administrator of an estate. Christy does not provide that only fraud, and nothing less culpable, is required for liability.
Similarly, Corrington supports our position that the prudent-person standard applies. Corrington provides, "[the executor of an estate] must exercise such discretion with fidelity to the interests of the beneficiaries, and in a reasonable and prudent manner." Corrington, 124 Ill. at 367, 16 N.E. 252. Corrington explains:
"He was required to act in good faith, and with that degree of reasonable diligence ordinarily employed in like business affairs by men of common prudence, and if, from his failure to do so, injury and loss occurred to the distributees under the will, he must make good the loss so occasioned. Acts of negligence in respect of the control or disposition of the estate, careless administration of it, or a willful disposition of the assets of the estate, whereby the rights of creditors or legatees, or parties entitled in distribution, are defeated, amount to a devastavit." (Emphases added.) Corrington, 124 Ill. at 368, 16 N.E. 252.
Thus, the prudent-person standard includes a range of conduct that encompasses negligent as well as willful conduct. Therefore, we disagree with defendant that plaintiffs were required to allege "bad faith, fraud or acts of omission constituting gross neglect of the estate that are so *925 unreasonable that they cannot be characterized as mere errors in judgment."
Defendant also contends that plaintiffs failed to state a cause of action in that they did not allege that defendant caused the estates to "lose money." We disagree with defendant, as the definition of a loss is broader than as defined by defendant. Illinois guardian and estate cases generally provide that a guardian should not be surcharged for matters in which there is no loss suffered by the estate (see, e.g., Dyniewicz, 271 Ill.App.3d at 625, 208 Ill.Dec. 154, 648 N.E.2d 1076). However, "loss" includes lost opportunity to invest in other more profitable investments. See Dyniewicz, 271 Ill.App.3d at 626, 208 Ill.Dec. 154, 648 N.E.2d 1076; see also In re Estate of Swiecicki, 106 Ill.2d 111, 87 Ill.Dec. 511, 477 N.E.2d 488 (1985) (bank, which was guardian, invested its ward's money in its own savings accounts and certificates of deposit and was found liable even though the ward's estate made money). There is a distinction between losing money as defined by defendant (having less than what you had) and a loss of realizing additional money through more profitable investments (having less than what you could have had absent the breach). The definition of "losing money" proffered by defendant is incorrectly narrow. We reject defendant's contention that plaintiffs were required to plead that the wards' estates "lost money" due to defendant's conduct. Plaintiffs were required to allege only a loss, and they did so.

CONCLUSION
Because plaintiffs stated a cause of action under the prudent-person standard, the trial court erred by granting defendant's motion to strike plaintiffs' objection. For these reasons, the judgment of the circuit court of Lake County is reversed, and the cause is remanded for further proceedings consistent with this opinion.
Reversed and remanded.
JORGENSEN, J., concurs.
Justice O'MALLEY, specially concurring:
I write separately because I do not share the majority's view that there is some difference between a professional standard of care (as articulated in Advincula) and an ordinary standard of care that takes professional standing into account (based on language in Advincula describing the rationale for a professional standard of care). See slip op. at 9 (citing Advincula for an "ordinarily prudent person" standard that incorporates professional status). Instead of dissecting the majority analysis point by point, I think it easier to spell out completely my analysis of this case.
Plaintiffs Mary Claire Collins (case No. 2-07-0451) and Megan Collins Lieberman (case No. 2-07-0452) appeal from the trial court's order striking their objections to the accounts filed by defendant Northern Trust Company, the co-guardian along with Mary Claire of the estates of her two children, Joseph Collins Lieberman and Megan Collins Lieberman, on the ground that the objections failed to state a claim for the breach of defendant's duty to properly invest the children's funds. On appeal, plaintiffs argue that the trial court applied the wrong standard of care to defendant's investment decisions and that, under the correct standard of care, their objections state a cognizable claim against the accounts. For the reasons that follow, I would reverse the judgment of the trial court and remand for further proceedings.
Plaintiffs' amended objections, which were in all relevant respects identical for both accounts, asserted that defendant was *926 "a corporate fiduciary which [held] itself out as having particular experience and expertise with the investment and management of funds for guardianship estates" but nevertheless invested substantial portions of the children's estates "in a short-term investment fund which generated a paltry return of about 1% after-tax and after guardian fees." The objections further alleged that "there was no excuse for holding these assets in such short-term investments" because the children "had sufficient income and other assets" to meet their needs. Plaintiffs argued that "[a] prudent investor" would have invested in more longterm assets with higher rates of return, and they asked that defendant be assessed a surcharge for the lost income suffered by the estates. The trial court later granted defendant's motions to strike the objections pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2006)) for their failure to state a claim. In a lengthy written opinion, the trial court reasoned that, where a guardian invests a ward's assets in one of the types of investments specifically authorized by the Probate Act of 1975 (Probate Act) (755 ILCS 5/1-1 et seq. (West 2006)), the guardian cannot be held liable for resulting losses to the estate "except in instances of bad faith, fraud or acts or omissions constituting gross neglect of the estate that are so unreasonable they cannot be characterized as mere errors in judgment," a standard that plaintiffs' objections failed to meet. Plaintiffs timely appeal. I agree with the majority that the trial court's imposition of a standard of bad faith, fraud, or gross neglect was error.
On appeal, the parties again dispute the proper standard of care to be applied to defendant's investment decisions. Defendant argues that, absent some allegation of bad faith or fraud, the Probate Act shields a guardian from liability for its decisions to invest in any of the types of investments specifically listed in the statute, while plaintiffs assert that Illinois law allows guardians to be liable for their investment decisions where they fail to meet a "prudent person" standard. Plaintiffs alternatively contend that Illinois law imposes an even more stringent "prudent investor" standard on the investment decisions of those who hold themselves out as having particular experience and expertise in investing, even if it does not impose such a strict standard on guardians generally. The parties present us with a question of law, which courts review de novo. In re Marriage of Crook, 211 Ill.2d 437, 442, 286 Ill.Dec. 141, 813 N.E.2d 198 (2004) (questions of law are reviewed de novo).
I begin by determining the standard of care applicable to guardians' investment decisions generally. Our case law has long held that "[a] guardian is bound to use ordinary prudence in managing his or her ward's estate and is liable for losses incurred through culpable indifference and negligence." In re Estate of Dyniewicz, 271 Ill.App.3d 616, 627, 208 Ill.Dec. 154, 648 N.E.2d 1076 (1995); see also Kingsbury v. Powers, 131 Ill. 182, 189, 22 N.E. 479 (1889) ("A guardian is required to observe that care and diligence in the performance of his duties that a good and conscientious business man exercises in his own affairs, under like circumstances");[1] *927 Parsons v. Estate of Wambaugh, 110 Ill. App.3d 374, 377, 66 Ill.Dec. 145, 442 N.E.2d 571 (1982) ("the defendant as guardian had the duty to manage the ward's property with the same degree of vigilance, diligence and prudence as a reasonable man would use in managing his or her own property").
In spite of the above authority, defendant argues that the Probate Act changed the common-law "prudent person" standard for guardians' management of their wards' estates by shielding guardians from liability for their investments so long as they invest in any of the assets specifically named in the statute.[2] Defendant presents us with an issue of statutory construction. The fundamental rule of statutory construction is to give effect to the intent of the legislature, and the best evidence of legislative intent is the language of a statute, which must be ascribed its plain and ordinary meaning. King v. First Capital Financial Services Corp., 215 Ill.2d 1, 26, 293 Ill.Dec. 657, 828 N.E.2d 1155 (2005). I therefore begin with the language of the Probate Act.
Section 21-2 of the Probate Act provides as follows:
"(a) It is the duty of the representative to invest the ward's money. A representative is chargeable with interest at a rate equal to the rate on 90-day United States Treasury Bills upon any money that the representative wrongfully or negligently allows to remain uninvested after it might have been invested. Reasonable sums of money retained uninvested by the representative in order to pay for the current or imminent expenses of the ward shall not be considered wrongfully or negligently uninvested.
* * *
(c) A representative may invest only in the types of property specified in Sections 21-2.01 through 21-2.15." 755 ILCS 5/21-2 (West 2006).
Sections 21-2.01 through 21-2.15 list 15 specific types of investments. Two of those sections refer to the standard of care applicable to a representative electing to purchase the named investments: the sections allowing investment in common trust funds (755 ILCS 5/21-2.13 (West 2006)) and mutual funds (755 ILCS 5/21-2.14 (West 2006)) indicate that those assets may be purchased "provided that the investment * * * meets the standard of the prudent investor rule for the investment of trust funds." The remaining sections contain no reference to any standard of care.
A court's function is to interpret the law as enacted by the legislature, "`not to annex new provisions or substitute different ones, or read into a statute exceptions, limitations, or conditions which depart from its plain meaning.'" In re Estate of Swiecicki, 106 Ill.2d 111, 120, 87 Ill.Dec. 511, 477 N.E.2d 488 (1985), quoting Belfield v. Coop, 8 Ill.2d 293, 307, 134 N.E.2d 249 (1956). "When a statute is enacted which covers an area formerly covered by common law, such statute should be construed as adopting the common law unless there is clear and specific language showing that a change in the common law was intended by the legislature." Proud v. W.S. Bills & Sons, Inc., 119 Ill.App.2d 33, 45, 255 N.E.2d 64 (1970); see Swiecicki, 106 Ill.2d at 120, 87 Ill.Dec. 511, 477 N.E.2d 488 (agreeing with appellate *928 court's application of the rule from Proud to the Probate Act).
The plain language of the Probate Act does not contain the type of clear and specific language necessary to supplant the common-law rule that guardians may be held liable for failing to exercise ordinary prudence in favor of a new rule that guardians are immunized from liability so long as they invest in the statutorily enumerated asset types. The Probate Act says that a guardian "may invest only in the types of property specified" in the statute (755 ILCS 5/21-2(c) (West 2006)); it makes no reference to any immunity or protection for guardians. In fact, the operative feature of Article 21 of the Probate Act is not that it confers rights to a guardian, but that it restricts a guardian's investment actions. Cf. Swiecicki, 106 Ill.2d at 120-21, 87 Ill.Dec. 511, 477 N.E.2d 488 (holding that a guardian could be liable for investing in assets not enumerated in the Probate Act because the Probate Act did not "expressly allow" the investment).
Defendant also offers that we must interpret the Probate Act as immunizing guardians' investment decisions because a contrary ruling would require that guardians "aggressively invest to maximize return * * * to the extent of any funds not needed for annual budgetary expense," a requirement that defendant argues would have the "potentially ruinous" effect of encouraging unnecessary risk-taking in guardianship investments. Neither I nor the majority share defendant's apprehension. A rule that requires a guardian to observe ordinary prudence in investing in the statutorily enumerated assets does not require or encourage unnecessary risk-taking: it actually discourages such imprudence. Defendant's proposed rule, on the other hand, might lead to absurd results, because it would remove any requirement that a guardian's investments be prudent so long as they involve a statutorily enumerated asset. Under defendant's rule, a guardian could set aside funds to meet the current needs of the ward and invest the balance of an estate in a single asset with high risk, such as stock (755 ILCS 5/21-2.12 (West 2006)), without any regard for the wisdom of the allocation. The application of a standard of care to a guardian's selection of investments from the statutory list serves an important purpose, and defendant has supplied us with no authority or convincing reason to depart from the "prudent person" standard of care recited in our case law.
For their part, plaintiffs agree that, at the very least, a "prudent person" standard should govern a guardian's investment decisions under the Probate Act. However, plaintiffs argue that the Probate Act takes the standard one step further, to require that guardians' investment decisions comport with an elevated "prudent investor" standard.
Just as with defendant's argument that the Probate Act changes the common law by providing immunity to guardians, plaintiffs' argument that the Probate Act changes the common law by providing for an elevated standard of care can succeed only if they can point to some clear and specific statutory language evincing the legislature's intent to change the law. The Probate Act includes no such language. Indeed, the most definitive clue the language of the Probate Act provides on this issue actually undercuts plaintiffs' argument. Sections 21-2.13 and 21-2.14, which allow a guardian to invest in common trust funds and mutual funds, allow those investments only where they comport with "the prudent investor rule for the investment of trust funds." 755 ILCS 5/21-2.13, 21-2.14 (West 2006). These references tell me two things. First, the fact that the legislature expressly invoked the prudent-investor rule for two specific *929 types of guardians' investments, but made no reference to it in the sections describing the remaining guardians' investments, indicates a legislative intent to apply the prudent-investor rule to guardians only with respect to those two investment types. Second, the legislature's description of the prudent-investor rule as the "prudent investor rule for the investment of trust funds" (emphasis added) implies that the rule is normally associated with trusts only, and thus not with guardianships. Further, the legislature's invocation, and extensive description, of the prudent-investor standard in the Trusts and Trustees Act (see 760 ILCS 5/5(a) (West 2006)), along with its failure even to reference that standard in the Probate Act (aside from the two references just discussed), also indicates that the legislature did not intend to invoke the prudent-investor standard in the Probate Act generally.
Aside from the above references to the prudent-investor rule, the only remaining portion of Article 21 of the Probate Act that could be interpreted to refer to a standard of care is section 21-2, which provides for liability for the representative who fails to invest a ward's funds, but it premises that liability on a showing that the guardian "wrongfully or negligently" failed to invest, without mention of the standard of care to be applied to reach those determinations. See 755 ILCS 5/21-2 (West 2006). From this statutory language, I see no clear legislative intent to overturn the common-law prudent-person standard in favor of a more stringent prudent-investor standard.
Based on the above discussion, I would conclude that the Probate Act neither immunizes guardians' investment decisions nor imposes a heightened prudent-investor standard on those decisions. Instead, I would interpret the Probate Act as leaving in place the common-law prudent-person standard of care that generally governs guardians' management of their wards' estates.
However, defendant's status as a guardian is not the only basis that plaintiffs offer for imposing a heightened standard of care on its investment decisions. Plaintiffs also urge that defendant be held to a stricter standard because, as stated in plaintiffs' objections, defendant "holds itself out as having particular experience and expertise with the investment and management of funds for guardianship estates." In pressing this argument, plaintiffs ask that we adopt, and apply to guardians, section 174 of the Restatement (Second) of Trusts, which provides that, "if the trustee has or procures his appointment as trustee by representing that he has greater skill than that of a man of ordinary prudence, he is under a duty to exercise such skill." Restatement (Second) of Trusts § 174, at 379 (1959). However, plaintiffs direct us to no authority applying the Restatement (Second) of Trusts to a guardian in this way. Instead, plaintiffs cite two cases involving executor-trustees (see In re Estate of Estes, 134 Ariz. 70, 654 P.2d 4 (1982); In re Sullenger's Estate, 2 Ariz.App. 326, 408 P.2d 846 (1965)), one case that referenced the Restatement (Second) of Trusts after noting that state statute imposed a higher duty of care (In re Estate of Baldwin, 442 A.2d 529 (Me.1982)), and one guardian case purporting to adopt and apply section 174 of the Restatement (Second) of Trusts but actually holding that the guardian "breached its duty to exercise common prudence, skill, and caution" (In re Estate of Scharlach, 809 A.2d 376 (Pa.Super.2002)). I would conclude that adopting and applying section 174 of the Restatement (Second) of Trusts is inadvisable here, because plaintiffs' argument is already governed by more established common-law principles.
*930 Section 299A of the Restatement (Second) of Torts provides that "one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities." Restatement (Second) of Torts § 299A, at 73 (1965). In Advincula v. United Blood Services, 176 Ill.2d 1, 223 Ill.Dec. 1, 678 N.E.2d 1009 (1996), our supreme court adopted this professional standard of care and noted that it "is utilized to measure the conduct of a wide variety of both medical and nonmedical professions." Advincula, 176 Ill.2d at 22-24, 223 Ill.Dec. 1, 678 N.E.2d 1009. The supreme court then favorably cited cases in which a professional standard of care had been applied to attorneys, physicians, podiatric practitioners, dentists, accountants, and social workers. Advincula, 176 Ill.2d at 23-24, 223 Ill.Dec. 1, 678 N.E.2d 1009.[3] If the professional standard of care extends to these professions, it extends likewise to professional guardians or investors such as defendant is alleged to be. See also Erlich v. First National Bank of Princeton, 208 N.J.Super. 264, 505 A.2d 220 (1984) (holding professional investor to a professional standard of care requiring it to "give prudent advice").
I acknowledge that there is at least some Illinois authority indicating that professional and nonprofessional fiduciaries should be held to the same standard of care. In In re Estate of Lindberg, 69 Ill.App.3d 714, 721, 26 Ill.Dec. 524, 388 N.E.2d 148 (1979), the court dismissed a professional-nonprofessional distinction as follows:
"Petitioners' first contention is that the Bank, as a professional fiduciary which has held itself out as having greater than average expertise, must be judged by that higher standard. While the acts of an executor must be judged in the context in which he acted [citation], in Illinois a corporate executor is held to no higher standard than an individual executor. (In re Estate of Venturelli (1977), 54 Ill.App.3d 997, 1002, 12 Ill.Dec. 667, 370 N.E.2d 290 * * *.)" In re Estate of Lindberg, 69 Ill.App.3d at 721, 26 Ill.Dec. 524, 388 N.E.2d 148.
(Venturelli, the case upon which Lindberg relied, stated that "[t]he corporate executor is held to no higher standard than the individual executor," without citation to authority and without further discussion. Venturelli, 54 Ill.App.3d at 1002, 12 Ill. Dec. 667, 370 N.E.2d 290.) The above passage from Lindberg conflates two ideas: the idea that a corporate fiduciary should be held to a higher standard of care than an individual fiduciary, and the idea that a professional fiduciary should be held to a higher standard than a nonprofessional. See In re Estate of Pirie, 141 Ill. App.3d 750, 758-59 n. 1, 97 Ill.Dec. 225, 492 N.E.2d 884 (1986) (raising the above criticisms of Lindberg and Venturelli). In light of the authority from other states imposing a higher standard of care on professional fiduciaries versus nonprofessional fiduciaries (see Pirie, 141 Ill.App.3d at 758-59 n. 1, 97 Ill.Dec. 225, 492 N.E.2d 884 (collecting authorities)), and in light of our supreme court's broad adoption of the professional standard of care in Advincula, I would conclude that the above passage *931 from Lindberg does not accurately reflect Illinois law. Instead, I would conclude that Illinois law imposes a heightened standard of care on those who hold themselves out as professionals in a particular field, and I would hold that the Probate Act incorporates by its silence the common-law professional standard of care just as it incorporates the ordinary standard of care for guardians' decisions generally. Because plaintiffs have alleged that defendant held itself out as having expertise in the investment and management of guardianship estates, I would apply the professional standard of care to plaintiffs' objections to defendant's investment and management of the estates.
Having determined the proper standard of care to apply to defendant's investment decisions, I next consider whether, under that standard of care, plaintiffs' objections should have been stricken pursuant to section 2-615 of the Code. A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face. Marshall v. Burger King Corp., 222 Ill.2d 422, 429, 305 Ill.Dec. 897, 856 N.E.2d 1048 (2006); see 755 ILCS 5/1-6 (West 2006) (Code applies to proceedings under the Probate Act). In considering the propriety of a dismissal pursuant to section 2-615, we must accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts, and we must construe the allegations in the light most favorable to the nonmoving party. Marshall, 222 Ill.2d at 429, 305 Ill.Dec. 897, 856 N.E.2d 1048.
Plaintiffs allege that defendant invested an unduly large portion of the guardians' estates in short-term, low-return investments when a prudent investor would have chosen more longterm investments with greater return. I conclude that this objection, taken as true, successfully alleges a breach of defendant's professional duty of care. However, I caution that this is not to say that a breach of an investor's duty may be established by a showing, based on hindsight, that the investor could have earned a greater return or that another investor might have performed better. As defendant notes, an investor or guardian cannot be charged with perfect foresight of the changes in value of all possible investments. Instead, I would hold that plaintiffs have successfully alleged that a prudent professional investor in defendant's position, even without the gift of foresight, would not have invested the estates as defendant did. For that reason, I would reverse the decision of the trial court dismissing plaintiffs' objections and remand the cause for further proceedings under the professional standard of care that I described herein.
NOTES
[1] The passage from Kingsbury refers to the care and diligence of a "business man" engaged in like affairs, instead of the care and diligence of a reasonable man. However, after the quoted sentence, the supreme court in Kingsbury went on to describe a guardian's liability in terms of whether the guardian made errors that he would have avoided "by the exercise of ordinary prudence and caution." Kingsbury, 131 Ill. at 189, 22 N.E. 479. I therefore interpret Kingsbury as imposing the same "prudent person" standard articulated in the remaining cases cited above.
[2] Defendant presses this argument at great length in its brief, to the point that it obfuscates, and even almost fails to (but eventually does in passing) acknowledge, plaintiffs' true argument, that the problem here is the mix of investments defendant chose within the statutorily permitted investments. At oral argument, defendant pressed this argument exclusively and avoided addressing plaintiffs' true argument.
[3] Prior to the decision in Advincula, there had been a conflict in the appellate court cases regarding whether the professional standard of care should apply to social workers. Compare Horak v. Biris, 130 Ill.App.3d 140, 145-46, 85 Ill.Dec. 599, 474 N.E.2d 13 (1985) (adopting the professional standard of care for social workers), with Martino v. Family Service Agency of Adams County, 112 Ill. App.3d 593, 595-97, 67 Ill.Dec. 714, 445 N.E.2d 6 (1982) (declining to apply professional standard of care to social workers). By favorably citing Horak, Advincula resolved this conflict.